**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO. 0:21-CV-60462**

CCUR AVIATION FINANCE, LLC, and
CCUR HOLDINGS, INC.,

                Plaintiffs,

v.

SOUTH AVIATION, INC. and
FEDERICO A. MACHADO,

                Defendants.

_____/

**VERIFIED AMENDED EXPEDITED MOTION FOR APPOINTMENT OF
TEMPORARY RECEIVER AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs, CCUR Aviation Finance, LLC ("CCURA") and CCUR Holdings, Inc. ("CCURH") (together, "Plaintiffs"), by this Verified Amended Expedited Motion for Appointment of Temporary Receiver and Memorandum of Law in Support (this "Amended Motion")[1] seek the appointment of a temporary receiver, pursuant to Fed. R. Civ. P. 66, 28 U.S.C. § 754 over Defendant South Aviation, Inc. ("South Aviation")[2] as set forth herein.

**I.      STATEMENT OF NEED FOR EXPEDITED CONSIDERATION**

1.      Plaintiffs file this Amended Motion to address the Court's concerns identified in the Order, dated March 2, 2021 [D.E. 11] (the "Order"), denying Plaintiffs' Original Motion [D.E. 4] and to bring to the Court's attention new information Plaintiffs only learned on the evening of March 2, 2021, after entry of the Order.

---

[1] This Amended Motion supersedes the original Verified Emergency Motion for Immediate Appointment of Receiver and Memorandum of Law in Support [D.E. 4] (the "Original Motion") but adopts and incorporates herein by reference each of the exhibits referenced therein and filed therewith (Exhibits "A-1" through "G").

[2] As used herein, "Defendants" shall refer to South Aviation and Defendant Federico A. Machado ("Machado").

2.      Plaintiffs do not seek, *ex parte* relief. Plaintiffs seek expedited relief as set forth below and in the Original Motion.[3] Immediately following the entry of the Order, Plaintiffs provided copies of their Original Verified Complaint, the Original Motion, and the proposed order submitted with the Original Motion to each of the Defendants by email, by and through Defendant Machado, as well as to counsel known to represent Machado.[4] Counsel for Plaintiffs has also emailed and left voice messages for Machado's counsel, none of which has been returned.[5]

3.      Within hours of delivering the above papers to Defendants and Machado's counsel on March 2, 2021, Machado sent an email that evening to representatives of the Plaintiffs, as well as to others believed to be similarly defrauded (the "Machado Email"), in which Machado:

- Confessed to having defrauded depositors, including Plaintiffs;
- Described the manner and uses to which he had converted the deposited funds;
- Advised that he was removing himself from his operations;
- Purported to fire at least one of his defense counsel; and
- Advised that he was cutting off all contact going forward.[6]

With his remarks that he is "a dead man walking," Machado's email strongly suggests that he is now on the run and has no further intention of appearing before this Court or working with his counsel to defend claims against South Aviation or, for that matter, himself.

4.      On March 2, 2021, Plaintiffs' counsel also emailed the Assistant United States Attorney for the Eastern District of Texas with responsibility for the Unsealed Indictment (the

---

[3] Plaintiffs believe the circumstances described herein warrant immediate attention but have amended the relief sought to avoid any implication of intent to seek *ex parte* relief or to avoid an opportunity for notice and, should the Court wish, a hearing on this request. Plaintiffs are available at the Court's convenience for a hearing and respectfully request that any such hearing be set within the next two (2) at the Court's earliest available date and time.
[4] *See* Declaration of David Weitman, at ¶ 3; and exhibit thereto, a true and correct copy of which is attached hereto as Exhibit "H" and incorporated herein by reference.
[5] *See* Exh. H, ¶ 4.
[6] *See* Exh. H, ¶ 5; and H-1 (the Machado Email).

**PLAINTIFFS' AMENDED VERIFIED EXPEDITED MOTION**
**FOR APPOINTMENT OF TEMPORARY RECEIVER, etc.**                    **Page 2**

"AUSA") to confer about the receivership relief sought herein in light of the government's stated intent to seek criminal forfeiture as to Machado. That same evening, Plaintiffs' counsel forwarded the Machado Email to the AUSA. On March 3, 2021, Plaintiffs' counsel conferred with the AUSA about the requested appointment of a temporary receiver. On March 3, 2021, having been provided a copy of the Verified Complaint, this Amended Motion, and the proposed order submitted herewith, the AUSA advised that the United States Attorney's Office could not take a position on the relief requested herein.[7]

5.  Subsequently, on March 4, 2021, the AUSA advised Plaintiffs' counsel that: (i) he regularly works with receivers in SEC enforcement actions; (ii) has worked with receivers in other civil contexts; (iii) typically cooperates with court-appointed receivers by combining efforts to recover assets and proceeds for victims and other creditors, with funds paying claims in an equitable manner; and (iv) would like to speak to the receiver in this case once appointed.[8]

6.  Based on Defendants' false representations, agreements executed under false pretenses, and promises of personal guaranties from Machado in favor of the Plaintiffs, Plaintiffs are depositors of an aggregate of $14,000,000 in fully refundable escrow deposits (the "Refundable Deposits") to non-party Wright Brothers Aircraft Title, Inc. (the "Escrow Agent") relating to the purported purchases of four (4) aircraft by Defendant South Aviation, which is owned and operated by its president, Defendant Machado.

7.  South Aviation and Machado agreed to the full and prompt refund of Plaintiffs' Refundable Deposits on or before January 12, 2021, or January 25, 2021, as applicable. Instead, Defendants have misappropriated Plaintiffs' deposits, and no amount of the Refundable Deposits totaling $14,000,000 has been returned.

---

[7] *See* Exh. H, ¶¶ 7-10. Plaintiffs are also serving the AUSA with a copy of this Amended Motion.
[8] *See* Exh. H, ¶ 8.

**PLAINTIFFS' AMENDED VERIFIED EXPEDITED MOTION**
**FOR APPOINTMENT OF TEMPORARY RECEIVER, etc.**                              **Page 3**

8.      Defendants, as admitted in the Machado Email, did not operate a legitimate aircraft acquisition enterprise as represented. Instead, they operated a vast Ponzi scheme and may have diverted most, if not all, of Plaintiffs' fully Refundable Deposits to: (i) South Aviation, (ii) Machado, (iii) one or more of various entities related to South Aviation and/or Machado or their affiliates, or (iv) the refunds of deposits made by prior depositors, leaving Plaintiffs and others similarly situated empty-handed. Indeed, in Machado's own words: "I did it myself. I faked signatures. I made up names."[9] The series of operative agreements executed by Defendants were thus little more than vehicles for the Defendants' massive fraud.

9.      As of the afternoon of Friday, February 26, 2021, the United States Attorney's Office for the Eastern District of Texas unsealed a Third Superseding Indictment in that certain criminal action against the Escrow Agent's principals and Defendant Machado, South Aviation's principal, pending in the United States District Court for the Eastern District of Texas.[10]

10.      The Unsealed Indictment: (i) confirmed Plaintiffs' understandings of the nature of the transactions into which they were fraudulently induced (i.e. that they were a Ponzi scheme); (ii) revealed that the total amount of funds swindled by Defendants from defrauded depositors is no less than $350 million, rather than a mere $165 million; and (iii) revealed a much broader conspiracy of wire fraud, money laundering, drug smuggling, and diversion of monies and assets to foreign jurisdictions than Plaintiffs were previously aware of. Machado, by his email, has now confessed to the substance of these allegations and charges.

11.      With the release of the Unsealed Indictment and Machado's confessions and actions alleged in the Machado Email, there is a serious and imminent threat that Plaintiffs' Refundable Deposits and the assets of South Aviation may be removed, dissipated, or diverted for purposes of

---

[9] *See* Exh. H-1 (the Machado Email).
[10] *See* Exhibits E and F (the Unsealed Indictment and accompanying docket sheet)

evading the obligations of the Defendants to the Plaintiffs, not to mention the real and imminent threat of destruction of books, records, emails, and other electronic communications that further establish a pattern of criminal activity. As confirmed by the Unsealed Indictment and the Machado Email, Machado is on the run and is known to own and operate businesses and assets outside the State of Florida and outside the United States. The unsealing of the indictment and the revelation of this lawsuit specifically alter Machado's incentives and motivations (as confirmed by the Machado Email), and Plaintiffs reasonably believe that, in the absence of appointment of a temporary receiver, South Aviation, under the direction and control of Machado will further: (i) divert, dissipate, and conceal funds and assets from Plaintiffs and this Court, and (ii) move such funds and assets beyond this Court's jurisdiction to avoid satisfying Plaintiffs' claims - and the claims of other similarly situated creditors owed in excess of $350 million. And, to be clear, South Aviation is not a defendant in the criminal forfeiture proceeding.

12.     Appointment of a temporary receiver for South Aviation is thus necessary to: (i) confirm what assets South Aviation has and previously had; (ii) confirm what South Aviation's creditors are currently owed; (iii) freeze assets to ensure that South Aviation's creditors are repaid; (iv) marshal, safeguard, and liquidate assets; (v) ensure that preferential payments to creditors and insiders do not occur at the expense of other creditors; (vi) ensure that South Aviation's creditors are repaid in a fair and equitable manner; and (vii) file any necessary or appropriate ancillary actions to recover monies or assets for the benefit of South Aviation's creditors.

13.     To preserve the status quo and ensure an adequate remedy remains available for victims, Plaintiffs respectfully and urgently request that the Court consider this Amended Motion on an expedited basis because the adequacy of the relief diminishes daily, following notice to Defendants, which has occurred, and with an opportunity for Defendants to be heard within two

(2) weeks at the Court's earliest available hearing date and time, and immediately thereafter appoint Michael I. Goldberg, as temporary receiver for South Aviation, and its affiliates, subsidiaries, successors, and assigns (exclusive of Machado, individually) including their respective assets, facilities, properties, insurance, books and records and other items as described below and in the proposed Order Appointing Temporary Receiver submitted herewith, for an initial period of six (6) months, subject to renewal and extension by this Court or, alternatively until final adjudication of the claims in this action or further order from this Court, subject to quarterly reporting by the temporary Receiver.

14.     Appointment of Mr. Goldberg as temporary receiver will not duplicate, undermine, or interfere with the efforts of federal authorities pursuing criminal charges and relief against Machado and others. First, the temporary receivership sought is over South Aviation, not Machado as an individual, and South Aviation is not a party to the criminal action in the Eastern District of Texas seeking criminal forfeiture from Machado and his alleged co-conspirators. Second, the criminal forfeiture sought by the US Government in the Eastern District of Texas is different and more restricted than the receivership authority this Court can grant as sought in this action, which will be subject to this Court's supervision.[11] Third, the US Government's efforts to recover the assets of Machado and his co-conspirators are separate from the function of the temporary receiver

---

[11] Several courts have also noted the cumbersome and inferior nature of criminal forfeiture in comparison to administration by bankruptcy trustees, for example, and have recognized the cooperation between administrators of equitable civil relief and federal authorities exercising criminal forfeiture and restitution rights. *See, e.g., United States Sec. & Exch. Comm'n v. Michael Kenwood Capital Mgmt., LLC*, 703 F. App'x 39, 40 (2d Cir. 2017) (confirming the propriety of simultaneous criminal and civil receivership proceedings); *US v Frykhokm*, 362 F.3d 413 (7th Cir 2004) ("Although [21 U.S.C.] § 853(n)(1) [criminal forfeiture and restitution] allows the Attorney General to use forfeited assets for restitution, it does not create a comprehensive means of collecting and distributing assets."); *Sec. & Exch. Comm'n v. Detroit Mem'l Partners, LLC*, No. 1:13-CV-1817-WSD, 2017 WL 1018344, at *1 (N.D. Ga. Mar. 16, 2017) (granting limited stay of civil proceedings to preserve Fifth Amendment privilege in parallel criminal proceeding but permitting the continued work of receiver appointed in civil action); *SEC v Madoff*, 2009 WL 980288 (S.D.N.Y. April 10, 2009) ("No opponent to the relief sought by the motion offers as familiar, comprehensive, and experienced a regime as does the Bankruptcy Code for staying the proliferation of individual lawsuits against Mr. Madoff individually, marshaling his personal assets other than those criminally forfeitable, and distributing those assets among his creditors according to an established hierarchy of claims.").

to exercise control over South Aviation.[12] Fourth, Mr. Goldberg has extensive authority working in cooperation with federal authorities pursuing criminal penalties in SEC, FTC, and other similar receiverships and is able and committed to working with the authorities seeking criminal penalties against Machado. Accordingly, Plaintiffs have conferred with the AUSA with responsibility for the financial aspects of the criminal investigation of and complaint against Machado and his co-conspirators, and the AUSA has confirmed that, while his office is familiar with and has worked in cooperation with receivers in the past and would work with any receiver appointed in this action, it neither opposes nor supports the appointment of Michael Goldberg as temporary Receiver.

## II.    GOVERNING LEGAL STANDARDS

### A.    This Court's Authority to Appoint a Receiver

15.    This Court has subject matter jurisdiction over this case and has the inherent equitable power to appoint a receiver. 28 U.S.C. § 1332; s*ee United States v. Bartle*, 159 F. App'x 723, 725 (7th Cir 2005); *Morgan v. McDonough*, 540 F.2d 527, 533 (1st Cir. 1976) ("[R]eceiverships are and have for years been a familiar equitable mechanism. They are commonly a vehicle for court supervision of distressed businesses, but have not been limited to that role." (internal citation omitted)); *see also SEC v. Levine*, 671 F.Supp. 2d 14, 36 (D.D.C. 2009) ("Receivers are appointed so that they may take charge of a company to enforce compliance with regulatory laws." (citations omitted)).

16.    Under 28 U.S.C. § 754, a "receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall ... be vested with complete jurisdiction and control of all such property with the right to take possession thereof" Accordingly, a receiver appointed in this action would have complete federal statutory jurisdiction

---

[12] While authorities have seized assets of the Escrow Agent and have frozen certain of its accounts, no such seizure or freezing of assets or accounts appears to have happened relative to South Aviation.

over South Aviation's assets located both in this district and elsewhere as they may be identified and located. *See Crawford v. Silette*, 608 F.3d, 275, 278 (5th Cir. 2010) ("federal law creates subject matter jurisdiction for federal receivers"); *Janvey v. Reeves-Stanford*, No. 3:09-CV-2151-N, 2010 WL 11463486, at *3 (N.D. Tex. Nov. 18, 2010) ("the location of the property sought by the Receiver has no bearing on standing" because 28 U.S.C. § 754 provides a receiver with complete jurisdiction over all property situated in different districts).

17.     In sum, this Court is best suited to adjudicate this case and has the authority to appoint a receiver over South Aviation, and its affiliates, subsidiaries, successors, and assigns (exclusive of Machado, individually) including their respective assets, facilities, properties, insurance, books and records, wherever they may be located in the United States or elsewhere, and this Court is the most appropriate federal forum to hear this expedited Amended Motion because South Aviation owns assets and facilities in, and operates out of, Fort Lauderdale, Florida.

### B.     Federal Receivership Standards

18.     "Federal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction." *Sterling v. Stewart*, 158 F.3d 1199, 1201 (11th Cir. 1998) (citing *Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291-92 (11th Cir.1998)). Fed. R. Civ. P. 66, states that "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Accordingly, the federal common law relating to receiverships is applied for such matters and, therefore, state law has no relevance. *JP Morgan Chase Bank, N.A. v. Heritage Nursing Care, Inc.*, 2007 WL 2608827 at *7 (N.D. Ill. 2007).

19.     Although Fed. R. Civ. P. 66 does not establish specific guidelines, Florida's federal courts consider the following circumstances relevant in connection with a motion for receiver:

(1) whether the party seeking the appointment has a valid claim; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) whether there is an imminent danger that the property will be concealed, lost, or diminished in value; (4) the inadequacy of legal remedies; (5) the lack of a less drastic equitable remedy; and (6) the likelihood that appointing the receiver will do more good than harm. *Calliope Cap. Corp. v. Earthfirst Techs., Inc.*, 2008 WL 1995077 at *2 (M.D. Fla, 2008); *PNC Bank v. Shan Motel Co.*, 2014 WL 12611034 at *3 (M.D. Fla 2014.) (both citing *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241-42 (5th Cir. 1997).

20.     "[A] district court has authority to place into receivership assets in litigation 'to preserve and protect the property pending its final disposition.'" *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (citing *Gordon v. Washington*, 295 U.S. 30, 37, 55 S.Ct. 584, 79 L.Ed. 1282 (1935)). The appointment of receiver is warranted "where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Netsphere*, 703 F.3d at 305 (internal quotations omitted).

## III.   <u>SUMMARY OF ALLEGATIONS</u>

21.     Based on Defendants' false representations, agreements executed under false pretenses, and promises of personal guaranties from Machado in favor of the Plaintiffs, Plaintiffs provided millions of dollars of financing to South Aviation and Machado in the manner described below and explained in detail in the Plaintiffs' Verified Complaint. Consistent with the allegations and charges in the Unsealed Indictment and now admitted in the Machado Email, Defendants, however, were not engaged in legitimate purchases of aircraft or legitimate escrow arrangements. Instead, Defendants were engaged in a Ponzi scheme by which Defendants enriched themselves through the Refundable Deposits made by Plaintiffs and others, and used Plaintiffs' Refundable Deposits to funnel funds to themselves and their related businesses or to refund escrow deposits to

prior depositors to maintain the façade of legitimacy and to continue to attract subsequent deposits.

## IV.    RELEVANT BACKGROUND FACTS

22.    Beginning in as early as 2018, as to CCURH, and in August 2020 as to CCURA, South Aviation, by and through its president, Defendant Machado, represented to each of the Plaintiffs that it was a buyer in the aircraft marketplace that frequently purchases aircraft.

23.    In furtherance of the scheme to induce Plaintiffs into the refundable escrow deposit transactions described above and in the Verified Complaint, South Aviation, by and through Machado, presented aircraft purchase agreements and/or letters of intent for the purchase of aircraft (collectively, the "Aircraft Purchase Contracts") to each Plaintiff. Pursuant to each of the Aircraft Purchase Contracts, the purported aircraft sellers required South Aviation to make substantial deposits into escrow, typically ten to twenty percent of the total aircraft purchase price. Plaintiffs, for a fee, would provide the funding for such deposits.

24.    The mechanics of how Plaintiffs would be paid its fee are as follows. South Aviation would first deposit a specified amount (for example, $150,000) (the "Deposit Fee") into an agreed escrow account with the Escrow Agent (non-party, Wright Brothers Aircraft Title, Inc.). The depositing Plaintiff would then deposit a much larger amount (for example, $2.35 million) into the agreed escrow account with the Escrow Agent, on behalf of South Aviation, which, when combined with the Deposit Fee made by South Aviation, would make up the balance of the depositing Plaintiffs' agreed Refundable Deposit (in this example, a total of $2.5 million).

25.    South Aviation and Machado were required to return or cause the return of each Refundable Deposit to the depositing Plaintiff in full upon a date certain; the depositing Plaintiff was to receive back both the amount the depositing Plaintiff deposited and the amount South Aviation deposited (in this example, the full $2.5 million).

26.    Plaintiff CCURH agreed to finance Refundable Deposits on behalf of South

Aviation, in connection with two (2) different aircraft transactions. Plaintiff CCURA agreed to finance Refundable Deposits on behalf of South Aviation, in connection with four (4) different aircraft transactions. Each was documented by various letter agreements with Defendants and escrow agreements with the Escrow Agent relating to the payment of fully refundable escrow deposits in connection with South Aviation's purported purchase of four (4) aircraft as explained in detail in the Verified Complaint. Plaintiffs summarize the transactions in the chart below:

| Aircraft | Plaintiff | Letter Agreement (Guaranteed by Machado) | Escrow Agreement | Extension Letter Agreement(s) | Refundable Deposit Amounts |
|---|---|---|---|---|---|
| Boeing 777-367 (ER) MSN: 34432 Reg. #: B-KPC **(Aircraft No. 1)** | CCURH | CCURH Letter Agreement No. 1, dated May 14, 2020 **(Exh. A-1)** | CCURH Escrow Agreement No. 1, dated May 14, 2020 **(Exh. A-2)** | CCURH First Extension Agreement, dated Sept. 10, 2020 **(Exh. A-3)** | $2,500,000 (5/14/20) |
| | CCURA | | | CCURH Second Extension Agreement, dated Nov. 13, 2020 (adding CCURA) **(Exh. A-4)** | $1,750,000 (11/13/20) |
| Boeing 777-367 (ER) MSN: 35301 Reg. #: B-KPH **(Aircraft No. 2)** | CCURH | CCURH Letter Agreement No. 2, dated May 14, 2020 **(Exh. B-1)** | CCURH Escrow Agreement No. 2, dated May 14, 2020 **(Exh. B-2)** | | $2,500,000 (5/14/20) |
| | CCURA | | | | $1,750,000 (11/13/20) |
| 2010 Boeing 767-32L (ER) MSN: 40343 Reg. #: 4K-AZ81 **(Aircraft No. 3)** | CCURA | CCURA Letter Agreement No. 1, dated Aug. 28, 2020 **(Exh. C-1)** | CCURA Escrow Agreement No. 1, dated Aug. 28, 2020 **(Exh. C-2)** | CCURA Extension Agreement No. 1, dated Nov. 27, 2020 **(Exh. C-3)** | $2,500,000 (8/28/20) $250,000 (11/27/20) |
| 2010 Boeing 767-32L (ER) MSN: 40342 Reg. #: 4K-AI01 **(Aircraft No. 4)** | CCURA | CCURA Letter Agreement No. 2, dated Aug. 28, 2020 **(Exh. D-1)** | CCURA Escrow Agreement No. 2, dated Aug. 28, 2020 **(Exh. D-2)** | CCURA Extension Agreement No. 1, dated Nov. 27, 2020 **(Exh. C-3)** | $2,500,000 (8/28/20) $250,000 (11/27/20) |
| | | | **Total Refundable Deposits** | | **$14,000,000** |

27.     Each of the amounts in the table above represents the Refundable Deposits, all of which are past due, but none of which has been returned.

28.     As a material inducement for Plaintiffs' entry into the various refundable escrow deposit transactions described above, pursuant to Section 10 of the respective Letter Agreements, Defendant South Aviation agreed to fully indemnify Plaintiffs against all damages and losses arising from any breach of the Letter Agreements, including, without limitation, the failure to return the Refundable Deposits.

29.     As a further material inducement for Plaintiffs' entry into the various refundable escrow deposit transactions described above, pursuant to Sections 5(b) and 9 of the respective Letter Agreements, Defendant Machado personally guaranteed all of South Aviation's obligations under the Letter Agreements, including, without limitation the obligations to return the Refundable Deposits to Plaintiffs and to fully indemnify Plaintiffs.

### A.      Failure to Repay Refundable Deposit No. 1 - $4,250,000

30.     Pursuant to the CCURH Letter Agreement No. 1, as extended, the CCURH Escrow Agreement No. 1, as extended, Refundable Deposit No. 1 was required to be refunded to CCURH and CCURA, respectively, by the latest, January 12, 2021. *See* Ex. A-4, at p. 1. To date, no amount of Refundable Deposit No. 1 has been returned to CCURH or CCURA. Despite demand for payment and for indemnification from South Aviation, no such payment or indemnity has been forthcoming. Despite demand, Machado has not complied with his guaranty obligations.

### B.      Failure to Repay Refundable Deposit No. 2 - $4,250,000

31.     Pursuant to the CCURH Letter Agreement No. 2, as extended, and CCURH Escrow Agreement No. 2, as extended, Refundable Deposit No. 2 in the amount of $4,250,000 was required to be refunded to CCURH and CCURA by the latest, January 12, 2021. *See* Exhibit A-4, at p. 1. To date, no amount of Refundable Deposit No. 2 has been returned to CCURH or CCURA.

Despite demand for payment and for indemnification from South Aviation, no such payment or indemnity has been forthcoming. Despite demand, Machado has not complied with his guaranty obligations.

### C.   Failure to Repay Refundable Deposit No. 3 - $2,750,000

32.     Pursuant to CCURA Letter Agreement No. 1, as extended, Refundable Deposit No. 3 was required to be refunded to CCURA by the latest, January 25, 2021. *See* Ex. C-3 at p. 1. To date, no amount of Refundable Deposit No. 3 in the amount of $2,750,000 has been returned to CCURA. Despite demand for payment and for indemnification from South Aviation, no such payment or indemnity has been forthcoming. Despite demand, Machado has not complied with his guaranty obligations.

### D.   Failure to Repay Refundable Deposit No. 4 - $2,750,000

33.     Pursuant to CCURA Letter Agreement No. 2, as extended, and CCURA Escrow Agreement No. 2, as extended, Refundable Deposit No. 4 was required to be refunded to CCURA by the latest, January 25, 2021. *See* Ex. C-3 at p. 1. To date, no amount of Refundable Deposit No. 4 has been returned to CCURA. Despite demand for payment and for indemnification from South Aviation, no such payment or indemnity has been forthcoming. Despite demand, Machado has not complied with his guaranty obligations.

### E.   Plaintiffs Discover Defendants' Massive Fraud

34.     On or around January 12, 2021, the Plaintiffs first learned that federal authorities had frozen the assets of the Escrow Agent at a time when the Plaintiffs were owed at least $14 million under the operative agreements. From that time until the afternoon of Friday, February 26, 2021, Plaintiffs continued to gather information regarding the status of their deposits and came to understand and believe at that time that: (i) no less than $165 million of deposits that were due and owing to financing parties, not unlike the Plaintiffs; (ii) the Escrow Agent had insufficient

funds to satisfy the return of $165 million of deposits; (iii) the Escrow Agent had failed and refused to return the deposits upon written demand by the Plaintiffs (and other financing parties similar to the Plaintiffs); and (iv) South Aviation and Machado were embroiled in a criminal investigation and likewise had failed and refused to return, upon demand, the $14 million owed to the Plaintiffs (and in excess of $150 million owed to the other financing parties not unlike the Plaintiffs).

35.     The revelation of the Unsealed Indictment on the afternoon of Friday, February 26, 2021, confirmed Plaintiffs' understandings and belief. The United States has charged the defendants, including Machado and the Escrow Agent's principals, with numerous felony counts, including conspiracy to commit wire fraud, conspiracy to manufacture and distribute cocaine, and most importantly for purposes of this Complaint, the United States specifically charged the defendants, including Machado and others, with engaging in a massive Ponzi scheme in violation of Title 18 of the United States Code. *See* Unsealed Indictment (Exh. E), pp. 21-34, 39 – 41).

36.     In light of the Unsealed Indictment and the public statements by representatives of the U.S. Attorney's Office, the United States believes that the Ponzi scheme Plaintiffs learned of in January 2021, actually involves depositors of between $350 million and $560 million who have not received their refundable deposits, and that the aircraft purchase transactions detailed below involved fictitious aircraft, fictitious sellers, and fictitious agreements.

37.     Defendant Machado has now confessed to much of what the United States has alleged and charged—that he, by and through his enterprises and in conspiracy with the Escrow Agent's principals, took investors' and depositors' money and converted it to his own use and benefit and now claims that he does not have the means by which to repay the amounts deposited.[13]

38.     Consequently, hundreds of millions of dollars, including Plaintiffs' Refundable

---

[13] *See* Exh. H-1 (Machado Email).

Deposits, that should have been kept in the Escrow Agent's account (and available to return to the Plaintiffs and others) have been: (i) under the direction and control of South Aviation and/or Machado, rather than the Escrow Agent; and (ii) converted to the use of South Aviation and/or Machado, including the transfer to other depositors through a Ponzi scheme, as well as to South Aviation, Machado, and/or Machado's affiliated entities. Moreover, the Unsealed Indictment makes clear that Defendants have been engaged in this Ponzi scheme since at least 2016.

39.     Attached to this Amended Motion is the resume of Michael I. Goldberg, who has served as an FTC, SEC, or equity receiver in numerous cases involving Ponzi schemes, as clearly appears to be the case here. The Plaintiffs, as the Court will see, have satisfied the requirements under the Federal Rules of Civil Procedure for the appointment of an temporary equity receiver.

## V.      REQUEST FOR APPOINTMENT OF TEMPORARY RECEIVER

### A.      Plaintiffs Have Valid Claims

40.     Defendants made demonstrably false representations to Plaintiffs that:  (i) South Aviation was engaged in legitimate aircraft purchase agreements that required the requested escrow deposits; (ii) South Aviation would deposit the Deposit Fees for the respective aircraft with the Escrow Agent; (iii) the Deposit Fees would become part of the Refundable Deposits as compensation for Plaintiffs making said fully refundable deposits; (iv) the Refundable Deposits would remain in the Escrow Agent's escrow account and would not be used for any other purpose; (v) the Refundable Deposits would be repaid to Plaintiffs on or before the dates set forth in the respective letter agreements, as extended, without qualification or reservation; (vi) South Aviation would indemnify Plaintiffs for any and all damages or losses incurred as a result of any failure to return the Refundable Deposits; and (vii) Machado would personally guaranty the return of the Refundable Deposits. Plaintiffs justifiably and reasonably relied upon these representations and made deposits of more than $13,000,000 with the Escrow Agent on behalf of South Aviation.

41.     In light of the allegations and charges in the Unsealed Indictment (and confirmed in the Machado Email) and the extent and nature of the vast scheme in which Defendants were engaged since at least 2016, at the time the above representations were made, neither South Aviation nor Machado had any intention of refunding the Deposit Fees or any of the Refundable Deposits to Plaintiffs. Instead, at all relevant times, South Aviation and/or Machado intended to use and have used the Refundable Deposits for their own benefit, converted them to their own use, or used the funds to refund deposits made by other depositors.

42.     The Letter Agreements, as amended, supplemented, and/or extended are valid and enforceable agreements, and Plaintiffs have fulfilled all their obligations under the Letter Agreements. It is beyond dispute that Defendants failed to perform their obligations under the respective Letter Agreements, as amended, supplemented, and/or extended, with the respective Plaintiffs and have, among other things, incurred a debt to Plaintiffs in excess of $14,000,000. Defendants have compounded their failure to repay the Refundable Deposits to Plaintiffs by failing to indemnify Plaintiffs and by Machado's refusal to comply with his guaranty obligations.

### B.     Fraudulent Activity Has Occurred and Likely Will Continue to Occur

43.     It cannot be disputed that Defendants defrauded Plaintiffs. Evidence of Defendants' fraudulent activity is mounting daily and has been further confirmed by the Unsealed Indictment (and now the Machado Email). Plaintiffs, as now confirmed by the Unsealed Indictment and the Machado Email, are also aware that Machado, individually or through various corporate affiliations, including South Aviation, has interests in assets or holdings in Guatemala and possibly other foreign countries. Given the extent of the amounts that have been diverted from Plaintiffs and other similarly situated depositors, the recent unsealing of the indictment, and Machado's written confession and expressed intent to walk away at this point leaving Plaintiffs and others holding the bag, it is probable, if not likely, that Defendants have already concealed or transferred,

or will conceal or transfer, monies, assets, and holdings that will be the only source of recovery for Plaintiffs and others similarly situated to the Plaintiffs.

### C.    Inadequacy of Legal Remedies and Lack of a Less Drastic Equitable Remedy

44.    Based on the extent and nature of the fraud Defendants have perpetrated on Plaintiffs and others, the vast network of entities affiliated with Defendants, and their affiliations and holdings in Guatemala and possibly other foreign jurisdictions, Defendants have indicated a clear intent and ability to avoid and evade all obligations to Plaintiffs. Further, Defendants' failure and refusal to comply with the Letter Agreements, to repay the Refundable Deposits, and the substantial sums Defendants owe to Plaintiffs and others, demonstrate that Defendants lack sufficient liquidity to pay their outstanding obligations. Defendants' apparent lack of liquidity places at risk Plaintiffs' Refundable Deposits and Defendants' assets that may be used to satisfy Defendants' obligations to Plaintiffs. Accordingly, Plaintiffs' resort to traditional legal remedies of judgment and collection will in all likelihood be futile. Plaintiffs' only viable remedy at this time to secure the greatest recovery of Plaintiffs' Refundable Deposits, as well as the investments or deposits of others, is the appointment of a temporary receiver to take control of South Aviation and its affiliates, subsidiaries, successors, and assigns (exclusive of Machado, individually) and their respective assets, facilities, properties, insurance, accounts, and books and records thereof, and to effect the orderly accounting of assets and liabilities, the liquidation of assets, the collection of receivables, the pursuit of recoveries for the benefit of all of South Aviation's creditors, and the just and equitable distribution of all amounts collected or recovered.

45.    Due to the nature of Plaintiffs' claims and Defendants' operations and affiliations, the revelation of the Unsealed Indictment on the afternoon of Friday, February 26, 2021, and the Machado Email there is a grave and immediate risk of loss, waste, concealment, or dissipation of: (i) funds and accounts that may hold Plaintiffs' Refundable Deposits, or (ii) assets, including

accounts, that may be used to satisfy South Aviation's obligations to Plaintiffs and other creditors similarly situated. In order to avoid this otherwise likely and inevitable loss to Plaintiffs, the Court should order the appointment of a temporary receiver to take control over South Aviation, and its affiliates, subsidiaries, successors, and assigns (exclusive of Machado, individually), including their respective assets, facilities, properties, insurance, and books and records, with the ability and authority to subsequently dispose of all or some of same consistent with the terms of the Temporary Receivership Order submitted herewith.

### D.    Likelihood that Appointment of Receiver Would Do More Good than Harm

46.    Defendants owe to Plaintiffs $14,000,000, owe at least $350 million to others similarly situated, and are under criminal investigation. To the extent Defendants, including South Aviation, are operating any sort of legitimate business enterprise, which is unclear based on the extensive fraud and debts incurred by South Aviation and the charges levied by the United States against Machado, South Aviation's continuing operation must be for the benefit of Plaintiffs and its other creditors. South Aviation contracted with Plaintiffs for the full and unequivocal return and repayment of the Refundable Deposits. Thus, any hardship to South Aviation is only to the extent of fulfilling its obligations under the operative agreements. As the district court in *Calliope Capital* observed in adopting the magistrate judge's recommended order:

> In the Report and Recommendation, the Magistrate Judge recognizes that the appointment of a receiver will probably cause substantial harm to Defendants, but found that, after balancing, the appointment decision favors Plaintiff based on the negotiated agreements, the Magistrate Judge found that Plaintiff should be afforded the benefits of its bargain to avoid further harm to its financial position. The harms have been balanced, but the conclusion is adverse to Defendants. This does not mean that the balancing is incorrect. *Calliope Capital Corp.*, at *4.

47.    As to the Plaintiffs and to other depositors similarly situated, the appointment of a receiver will be beneficial. Plaintiffs and others will be able to rely on a Court-appointed fiduciary to: (i) confirm what assets South Aviation has and previously had; (ii) confirm what South

**PLAINTIFFS' AMENDED VERIFIED EXPEDITED MOTION**
**FOR APPOINTMENT OF TEMPORARY RECEIVER, etc.**                                    **Page 18**

Aviation's creditors are currently owed; (iii) freeze South Aviation's assets to ensure its creditors, including the victims of the Ponzi scheme, are repaid; (iv) marshal, safeguard, and liquidate assets; (v) ensure that preferential payments to creditors and insiders do not occur at the expense of other creditors; (vi) ensure that South Aviation's creditors are repaid in a fair and equitable manner; and (vii) file any necessary or appropriate ancillary actions to recover monies or assets for the benefit of South Aviation's creditors.

48.     Appointment of the temporary receiver will not hinder or adversely impact the ongoing criminal investigation and prosecution of Machado and his alleged co-conspirators or the efforts by the US Government to seek and implement criminal forfeiture and restitution measures. As noted above, criminal forfeiture and restitution are relief available to the US Government for the benefit of victims and/or law enforcement, but criminal forfeiture and restitution do not provide the US Government with the authority or parameters under which to recover monies that may have been fraudulently transferred but not necessarily the proceeds of a criminal enterprise. A receiver, much like a bankruptcy trustee, however, would have such authority and powers (pursuant to the Court's order and statutes like the Uniform Fraudulent Transfer Act) and can work cooperatively with the US Government to ensure the greatest extent of recovery for victims and other creditors. Plaintiffs have confirmed with the AUSA for the Eastern District of Texas, that his office is familiar with and has worked in cooperation with receivers in the past and would work with any receiver appointed in this action and neither opposes nor supports the appointment of Michael Goldberg as temporary receiver as requested herein.

**E.     Request for Appointment of Michael Goldberg as Temporary Receiver**

49.     Plaintiffs propose that Michael I. Goldberg, Esq. be appointed as temporary receiver for South Aviation and its affiliates, subsidiaries, successors, and assigns (exclusive of Machado, individually) including their respective assets, facilities, properties, insurance, books

and records, and other items of South Aviation as described in the Order Appointing Temporary Receiver submitted herewith (the "Temporary Receivership Order"), the terms of which are hereby incorporated herein by reference. The candidate is prepared to assume this responsibility if so ordered by this Court. Exhibit "G" to the Original Motion and incorporated herein by reference is a true and correct copy of Mr. Goldberg's *CV*, which reflects his extensive experience as an FTC receiver, an SEC receiver, and equity receiver in numerous cases involving Ponzi schemes.

50.     Plaintiffs request entry of the Temporary Receivership Order submitted herewith to provide the Receiver with all powers, rights, duties, and obligations as set forth therein.

51.     In light of the extent and nature of the fraud, the lack of harm to South Aviation, and the extensive debts South Aviation owes to Plaintiffs, Plaintiffs respectfully request that the appointment of the Receiver sought herein be granted without the requirement for a bond by Plaintiffs or the Receiver. Alternatively, Plaintiffs request a nominal bond not to exceed $500 in the aggregate for Plaintiffs and/or the Receiver.

## PRAYER

**WHEREFORE**, Plaintiffs pray that the Court, upon notice to Defendants of any hearing or submission hereof with an opportunity for response, enter the Order Appointing Temporary Receiver submitted herewith appointing Michael I. Goldberg, Esq., as equity receiver over South Aviation, and its affiliates, subsidiaries, successors, and assigns (exclusive of Machado, individually) including their respective assets, facilities, properties, insurance, books and records, and other items of South Aviation as described therein, and grant unto Plaintiffs any and all such other and further relief, at law or in equity, to which they may be justly entitled.

Dated: March 4, 2021

Respectfully submitted,

*/s/ Jonathan B. Morton*
Jonathan B. Morton, Esq.
Florida Bar No. 956872
jonathan.morton@klgates.com
Stephen A. McGuinness, Esq.
Florida Bar No. 89369
stephen.mcguinness@klgates.com
**K&L GATES LLP**
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 3900
Miami, FL 33131-2399
Telephone:      305-539-3300
Facsimile:      305-358-7095

*-and-*

Christopher A. Brown, Esq.
*Pro Hac Vice*
Texas Bar No. 24040583
chris.brown@klgates.com
David Weitman, Esq.
*Pro Hac Vice*
Texas Bar No. 21116200
David.weitman@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone:      214-939-5500
Facsimile:      214-939-5849

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Defendants have not been served with a Summons in this action and have not appeared as of the date of this Amended Motion. The undersigned, however, certifies that on this date, a copy of the foregoing has been served upon all parties and counsel designated for service via the Court's ECF system and has been sent separately by email, unless otherwise indicated, to Defendants and to the Assistant United States Attorney's Office for the Eastern District of Texas as set forth below.

Upon request by the Court, the undersigned will notify Defendants by email as set forth below of the date and time of any hearing or submission deadline for the Court's consideration of this Amended Motion.

South Aviation, Inc.
1470 Lee Wagoner Blvd, Suite 100
Fort Lauderdale, FL 33315
Attn: Federico A. Machado, President
Email:
fmachado@southaviation.com

Vincent E. Schindeler
2000 GLADES ROAD #312
BOCA RATON, FL 33431
**(via hand delivery)**

Federico A. Machado
1470 Lee Wagoner Blvd, Suite 100
Fort Lauderdale, FL 33315
Email:
fmachado@southaviation.com

Michael E. Clark
Baker Donelson
1301 McKinney Street, Suite 3700
Houston, TX 77010
Phone:  (713) 286-7169
mclark@bakerdonelson.com

Dan C. Guthrie, Jr.
4131 North Central Expy
Suite 900
Dallas, TX 75204
Phone: (214) 953-1000
danguthrie@whitecollardefense.com

Robert Austin Wells
Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of Texas
110 N. College, Suite 700
Tyler, Texas 75702
903-590-1400
903-590-1436 (fax)
Robert.Wells3@usdoj.gov

Ernest Gonzalez
Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of Texas
660 N. Central Expwy., Suite 400
Plano, Texas 75074-6749
972.509.1201
Ernest.Gonzalez@usdoj.gov

/s/ Jonathan B. Morton
Jonathan B. Morton, Esq.

309202859 v4 0817698.00004

**PLAINTIFFS' AMENDED VERIFIED EXPEDITED MOTION**
**FOR APPOINTMENT OF TEMPORARY RECEIVER, etc.**                    **Page 22**

## <u>VERIFICATION</u>

**STATE OF TEXAS** )

)

**COUNTY OF TRAVIS** )

1.      "My name is Igor Volshteyn.  I am the President of CCUR Holdings, Inc. ("<u>CCURH</u>") and the President of CCUR Aviation Finance, LLC ("<u>CCURA</u>" and, together with CCURH, the "<u>Plaintiffs</u>"). I am over 21 years of age and legally able to provide this verification. The facts stated herein are within my personal knowledge and are true and correct.

2.      I have read the Plaintiffs' Verified Amended Expedited Motion for Appointment of Temporary Receiver and Memorandum of Law in Support (the "<u>Amended Motion</u>"), and I declare under penalty of perjury that the facts presented in the Amended Motion, as they relate to CCUR Holdings, Inc. and to CCUR Aviation Finance, LLC, are true and correct to the best of my knowledge and belief.

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Executed in Travis County, Texas, on this the 4th day of March 2021.

_____

Igor Volshteyn