## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60462-BLOOM/Valle

CCUR AVIATION FINANCE, LLC and
CCUR HOLDINGS, INC.,

      Plaintiffs,

v.

SOUTH AVIATION, INC. and
FEDERICO A. MACHADO,

      Defendants.

_____/

## TEMPORARY RECEIVER'S SECOND INTERIM APPLICATION FOR REASONABLE FEES AND REIMBURSEMENT OF COSTS FOR JULY 1, 2021 – SEPTEMBER 30, 2021

Barbara Martinez, Esq., as the court-appointed Temporary Receiver (the "Temporary Receiver"), respectfully moves this Court for approval of her Second Application for payment of reasonable fees and reimbursement of incurred costs (the "Second Application") for the Temporary Receiver and Holland & Knight LLP ("H&K") for services provided from July 1, 2021 through September 30, 2021 (the "Application Period"), and others professionals retained since April 2021 on a delayed billing cycle. In support thereof, the Temporary Receiver states:

### I.    CASE STATUS

This action was filed on March 1, 2021 by Plaintiffs CCUR Aviation Finance, LLC and CCUR Holdings, Inc.'s (collectively, the "Plaintiffs") against South Aviation, Inc. ("South Aviation") and Frederico A. Machado (collectively, the "Defendants") relating to a Ponzi scheme arising out of a series of aircraft financing transactions. Plaintiffs submitted a Verified Amended Expedited Motion for Appointment of Temporary Receiver over Defendant South Aviation, Inc.,

[ECF No. 13] ("Amended Motion"). This Court previously granted two motions to intervene submitted by: (i) WBIP Aviation One, LLC and WBIP Aviation Two, LLC ( "WBIP Intervenors") and (ii) Metrocity Holdings, LLC ("Metrocity Intervenor"). See [ECF Nos. 38 & 42]. The WBIP Intervenors and Metrocity Intervenor each joined in the Amended Motion. *See* [ECF Nos. 21 & 32].

On April 16, 2021, pursuant to the Court's Order on Plaintiffs' Verified Amended Expedited Motion for Appointment of Temporary Receiver (the "Appointment Order"), the Court appointed Barbara Martinez, Esq., to, *among other things*, confirm what assets South Aviation previously had and currently has; confirm what South Aviation's creditors are currently owed; freeze assets to ensure South Aviation's creditors are repaid; marshal, safeguard, and liquidate assets; ensure that preferential payments to creditors and insiders do not occur at the expense of other creditors; ensure that South Aviation's creditors are repaid in a fair and equitable manner; and file and prosecute ancillary actions to recover monies or assets for the benefit of South Aviation's creditors. The Temporary Receiver's First Fee Application, [ECF No. 89], details her efforts to achieve these objectives, as well as the various challenges faced in connection with this undertaking with respect to the Receivership Estates.[1]  Recently, the Court entered an order expanding the Receivership to include JF Aircorp, Inc.,  [ECF No. 113], which includes the 1986 Bombardier Challenger C1-601-2A12 described further below.

---

[1] The Receivership Estates includes Defendant South Aviation, Inc., and its respective affiliates, subsidiaries, successors, and assigns (excluding Defendant Machado individually).

## II.  BACKGROUND OF PROFESSIONALS AND FEES

Due to the complexity and unique nature of this case, it was necessary for the Temporary Receiver to employ professionals that are experienced and familiar with fraud investigation, asset-tracing and recovery, Ponzi schemes, aviation law, international disputes, and bankruptcy, restructuring and creditors' rights. As a result, over the past six months, the Temporary Receiver engaged: (1) H&K to provide legal services and assist in marshaling the assets of the Receivership; (2) HD Investigative Group to conduct the preliminary investigation of South Aviation; (3) Legalsa to provide legal services in Guatemala; (4) Conner & Winters, LLP to provide legal services with respect to the chapter 7 bankruptcy proceeding captioned *In re Wright Brothers Aircraft Title, Inc.*, No. 21-10994-JDL (Bankr. W.D. Okla.) (the "WBAT Bankruptcy"), which is closely related to the administration of the Receivership Estates;[2] (5) R&H Restructuring to provide asset recovery tracing services; and (6) and Broadlands Mineral Advisory Services Ltd. to provide mine appraisal and consulting services.

As provided in the Appointment Order, the Temporary Receiver and her professionals are entitled to reasonable compensation. [ECF No. 43]. Additionally, "the compensation of the Temporary Receiver and her professionals shall be entitled to priority as administrative expenses." [*Id*.]. Due to the illiquidity of the Receivership Estate in the prior months, the Temporary Receiver requested a delayed billing cycle for certain retained professionals. These professionals have been instrumental to ensure the Temporary Receiver is able to take a holistic approach to the

---

[2] Association with local counsel is required in order for an attorney to appear *pro hac vice* in a proceeding pending before the United States Bankruptcy Court for the Western District of Oklahoma. *See Local Rules of the United States Bankruptcy Court for the Western District of Oklahoma*, R. 9010-1(G)(5).

administration of the Receivership Estates, particularly given the international reach of the scheme that led to the initiation of this Receivership.

For the Application Period, the work of the Temporary Receiver and her professionals primarily focused on investigating the fraud and related activities, locating and taking control of additional Receivership assets, liquidating and pursuing additional assets for the Receivership, analyzing investor information for the claim process and litigation, and assessing the value of the remaining assets. To that end, during the Application Period the work of the professionals of the Receivership has generally fallen within the following core work streams: identifying, preserving and liquidating Guatemalan entities and assets; pursuing aircraft and creditor claims; determining the true and just stakeholders of South Aviation; identifying the "net winners" of the Ponzi scheme and recoverable assets; conducting follow-up investigations and interviews; and preparing a funding, recovery and litigation plan. The Temporary Receiver also had to coordinate with other quasi-parallel proceedings to ensure that the assets could be marshalled expeditiously without interfering with the WBAT Bankruptcy and the criminal proceedings pending in the United States District Court for the Eastern District of Texas with respect to certain individuals involved in the scheme which precipitated the Temporary Receiver's appointment in this matter.

In accordance with the Appointment Order, the Temporary Receiver requests that this Court enter an order authorizing her to pay:

1.  investigative fees for HD Investigative Group;

2.  reasonable attorneys' fees due to Legalsa, local counsel in Guatemala;

3.  fees for Andrew Turner, Local Counsel for the WBAT Bankruptcy;

4.  fees for R&H Restructuring for forensic asset tracing services;

5.  reasonable fees and costs incurred by her counsel, H&K;

6. the Temporary Receiver's fees; and

7. approve, *nunc pro tunc*, the distribution of funds to Broadlands Mineral Advisory Services Ltd. for their visit to and appraisal of the mining processing plant and other assets owned by Minas del Pueblo, S.A. ("MDP").[3]

Specifically, the Temporary Receiver seeks Court approval to pay $316,274.00 in fees and $4,328.00 in reimbursement of costs for H&K's legal services rendered during the Application Period. *See* **Exhibit 2**. The Temporary Receiver and her team have billed $39,800.50 in fees and $1,375.49 in costs and requests that she be reasonably compensated for her diligent administration of the Receivership Estates. *See* **Exhibit 3**. The Temporary Receiver and her professionals have paid expenses, including payroll for employees, necessary to maintain assets for the creditors' benefit.

Additionally, the remaining requested fees are owed to the other professionals engaged by the Temporary Receiver for their valuable services, as more fully described herein, which include the mine appraisal, accounting, and consulting services. *See* **Exhibits 4-8.**

## II.   ACCOUNTING

The Appointment Order provides, "[t]he Temporary Receiver need not obtain Court approval prior to the disbursement of South Aviation's funds for expenses in the ordinary course of the administration and management of South Aviation, including the maintenance of its assets."

---

[3] The distribution of the funds to Broadlands was necessary given the unique circumstances of the Receivership. The site visit, the extraction of samples, and the appraisal/valuation report are critical to the liquidity of the Receivership and the ultimate recovery for the creditor body. The Temporary Receiver, and her counsel, advised counsel for the group of putative creditors about the engagement of the mining experts, the site visit, and the forthcoming report. There was a consensus that these were necessary steps.  The delay in the report was due to the transportation of the samples from Guatemala to Peru for assaying and ultimate analysis beyond the Temporary Receiver's control.

[ECF No. 43]. Therefore, South Aviation funds have been disbursed for the expenses in the ordinary course of business of the administration and maintenance of the South Aviation assets located in Guatemala without this Court's approval. Further, as provided in the Appointment Order, this Court and the creditors are being periodically informed of these expenses through the Temporary Receiver's status reports. *See, e.g.,* [ECF No. 111], reimbursement to J. Bremermann for MDP weekly expenses.[4]

The Temporary Receiver will soon file an interim status report that will include additional details regarding the expenses incurred by the Receivership in the ordinary course of business, assets sold in Guatemala, cash on hand, the amounts paid for the maintenance and preservation of MDP, as well as projected expenses.

### III.   THE PROFESSIONALS AND SERVICES RENDERED DURING THE APPLICATION PERIOD

#### A.  The Temporary Receiver

The Temporary Receiver commenced services immediately upon her appointment. She has worked diligently to identify the necessary professionals to assist in the recovery in order to ensure the Receivership Estates are administered as efficiently as possible, expand the Receivership when appropriate, investigate the Receivership Estates, and, to the extent possible, oversee the day-to-day operations of the Receivership Estates.

In this Second Application, the Temporary Receiver has proactively applied a discount to the fees of any professional who customarily charges above $750.00 per hour, with the exception

---

[4] For background., Jeffrey Bremermann is a former consultant for MDP in Guatemala City who has been retained by the Temporary Receiver to assist with the maintenance of MDP and related assets.  Mr. Bremermann is well-positioned for this role given his knowledge and familiarity with MDP.  His role is critical to maintaining the frequent communication with the indigenous communities on site, ensure the safety and preservation of the various assets in Guatemala, and disbursing weekly funds to MDP's employees. He has also assisted the Receivership in identifying potential buyers of South Aviation assets in Guatemala.

of the Temporary Receiver, Warren Gluck, and Jose Casal of H&K, and Martin Trott from R&H Restructuring (described below) in order to keep fees as reasonable as possible for the benefit of the creditor body at large of the Receivership Estates. The Temporary Receiver removed the fees incurred from legal research platforms as well as document retrieval fees. Fees requested as a result of the Temporary Receiver's efforts, in the sum of $41,175.99, are attached hereto as **Exhibit 3**.

### B.  Holland & Knight LLP

As counsel for the Temporary Receiver, H&K has provided day-to-day consulting and legal services to the Temporary Receiver, sold assets in excess of $180,000.00, located additional assets such as aircraft, drafted various pleadings regarding asset recovery and expansion of the Receivership, worked towards creating a claims process, reviewed business records of the Receivership Estates, marshalled both the domestic and foreign assets, and facilitated conversations between the Temporary Receiver and putative creditors to keep them apprised of the Temporary Receiver's efforts and material developments. A comprehensive review of the more than 70,000 emails stored at South Aviation's server is ongoing. The database is being stored by a third party vendor through H&K at a flat monthly rate. This document review is integral to assessing the potential claims and avenues of recovery for the benefit of the Receivership Estates. Attached as **Exhibit 2** is a detailed statement of services for reasonable fees and reimbursement of actual incurred costs for H&K's services totaling $320,602.00.

### C.  Legalsa

Legalsa is the Temporary Receiver's local counsel in Guatemala, with whom the Temporary Receiver's team is working to address the legal issues pertaining to the foreign entities and their assets, including but not limited to: the transferring of this entities and assets under the Receivership's control; MDP's mining license; labor disputes filed against MDP for past wages; an aircraft seized by the Guatemalan government; and a criminal investigation launched against

the former legal representative of MDP. Thus, Legalsa's assistance is critical to the Temporary Receiver's ability to not only complete her analysis of the assets and liabilities of the Receivership Estates located in Guatemala, but also protecting such assets. Moreover, Legalsa has advised the Temporary Receiver on a number of miscellaneous business and operational issues regarding the foreign entities and assets. There are a number of challenges associated with the Receivership Entities located in Guatemala that require constant communication between the Temporary Receiver, H&K, and Legalsa. A detailed summary of the tasks, and unique circumstances surrounding the Receivership's efforts to liquidate the assets in Guatemala was included in the Temporary Receiver's Second Interim Status Report dated August 30, 2021. [ECF No. 111]. Attached as **Exhibit 4** is a detailed statement of services for reasonable fees and reimbursement of actual incurred costs for Legalsa's services totaling $15,862.00.

### D.  R&H Restructuring (Cayman)

As experts in asset tracing, cross border insolvency, forensic accounting, and asset disposition, R&H Restructuring is conducting a forensic analysis which outcome will be crucial to the Temporary Receiver's investigation of potential claims and causes of action against various third parties, including "net winners." R&H team has broad experience in leading complex administrations, liquidations and receiverships across a number of industry sectors and jurisdictions. Over the past three months, R&H has analyzed the bank records of the various Receivership Entities, and is scheduled to present the results of their investigation to date to the Temporary Receiver next week. R&H Restructuring has generously agreed to work *on spec* to assist in the recovery efforts for the benefit of the Receivership Estates. The current invoice for services rendered in the amount of $24,543.10 is attached hereto as **Exhibit 6**.

### E.  HD Investigative Group

The Temporary Receiver retained the private investigator team at HD Investigative Group which brings over 30 years of investigative experience and prior receivership knowledge. HD Investigative conducted the preliminary asset investigation into South Aviation and its related entities, including carrying out the initial site visit to the South Aviation office. The investigators conducted brief interviews, researched various assets, communicated with fix-base operators ("FBOs") for aircraft in the name of the Receivership Estates, and gathered useful information to begin the marshalling of assets. As attached in **Exhibit 5**, the reasonable fees requested for HD Investigative's services are $4,161.00.

### F.  Conner & Winters, LLP

Andrew R. Turner is a partner at Conner & Winters LLC. Mr. Turner has more than 30 years of experience in commercial bankruptcy cases involving oil & gas, real estate, telecommunications, medical services, trucking and many other industries, representing large secured and unsecured creditors, debtors in possession, trustees and committees and members of committees. Mr. Turner has particular experience in the aviation industry and serves as local counsel in the WBAT Bankruptcy. His services  for the Receivership include attendance at various hearings and consulting the Receivership, and keeping the Temporary Receiver and her counsel apprised of any material developments in the WBAT Bankruptcy, which is still in its early stages. The reasonable fees requested for his legal services are $3,151.90, attached hereto as **Exhibit 7**.

### G.  Broadlands Mineral Advisory Services Ltd.

Broadlands Mineral Advisory Services Ltd. ("Broadlands" or "Mining Experts") was founded in 2012 by Bernard Guarnera, who has more than 40 years of experience with mining and consulting firms in the mineral industry and specializes in the valuation of mineral properties and mining companies, ore reserve analyses, and the feasibility of mineral deposit development. His

expertise includes base and precious metals, coal and lignite, industrial minerals, and ferrous metals.

On August 16, 2021, Mr. Guarnera and Mark Jorgensen, of Broadlands, visited MDP with the ultimate goal of preparing an independent expert report that will include a value assessment of: (i) the processing plant, laboratory, and equipment at MDP, and (ii) the quality of MDP's mineral stockpiles. The Temporary Receiver's team coordinated the logistics of Broadlands site visit to MDP.

The Temporary Receiver received a preliminary report from the Mining Experts, and is waiting for a final report to provide to the Court, under seal, as well as distribute to the parties to this proceeding. Due to the specialty of the work and the priority of the appraisal for the continuation of the Receivership, the Temporary Receiver distributed funds to the Mining Experts from the Receivership Estates to fund the visit and preserve the assets for the benefit of the creditors. Therefore, we respectfully request that the Court approve, *nunc pro tunc*, the distribution of funds to the Mining Experts. A detailed accounting of the funds paid to the Mining Experts for the expenses they incurred to visit MDP during the Application Period for the sum of $22,984.00 is attached hereto in **Exhibit 8**, and were also provided in the Temporary Receiver's Second Interim Status Report. [*See* ECF No. 111]. Broadlands has agreed to delay the collection of its fees until 90 days after the final valuation report is issued.

Based on the diligent work described above and detailed in the attached exhibits, the Second Application contains the following fees, costs, and expenses:

| Fee Application Breakdown | | |
|---|---|---|
| Temporary Receiver | $39,800.50 | (Fees) |
| | $1,375.49 | (Costs) |
| | **$41,175.99** | |
| Holland & Knight LLP (Counsel to Receiver) | $316,274.00 | (Fees) |
| | $4,328.00 | (Costs) |
| | **$320,602.00** | |
| HD Investigative Group (Private Investigators) | $4,161.00 | |
| Legalsa (Guatemala Counsel) | $15,862.00 | |
| Connor & Winters, LLP (Oklahoma Bankruptcy Counsel) | $3,151.90 | |
| R&H Restructuring | $24,543.10 | |
| **TOTAL:** | **$409,495.99** | |
| Expenses Paid for the Benefit of the Receivership | | |
| Broadlands Mineral Advisory Services Ltd.  (Mining Experts and Site Visit) | $22,984.00 | |
| **TOTAL:** | **$22,984.00** | |

## IV.  MEMORANDUM OF LAW

The Temporary Receiver and her professionals are entitled to reasonable compensation and costs pursuant to the Appointment Order. [ECF No. 43]. Generally, attorneys' fees sought by a receiver and her professionals will be evaluated utilizing the lodestar method, which assists the court in determining whether the hourly rates and hours expended are reasonable. *SEC v. Onix Capital LLC*, 2020 WL 9549527, at *2 (S.D. Fla. Jan. 24, 2020), *report and recommendation adopted by* 2020 U.S. Dist. LEXIS 254333, 2020 WL 9549523 (S.D. Fla. May 13, 2020). In determining what is a reasonable hourly rate and what number of compensable hours is reasonable, courts consider the following factors enumerated in *Johnson*: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount

involved and results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express*, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974); *H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1274-1275 (S.D. Fla. 2019); *see also Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299-1300 (11th Cir. 1988) (the Eleventh Circuit reaffirmed the use of the *Johnson* factors).

As demonstrated below, in applying the *Johnson* factors, the Temporary Receiver and her professionals charged a reasonable hourly rate for their services.

### A. Application of the Johnson Factors

#### 1. *Time and labor required.*

The Receivership has been time- and labor-intensive, and the exhibits attached to this Application evidence the herculean effort that the Temporary Receiver and her professionals have expended to advance the Receivership. *See* Exhibits. As steward of the Receivership Estates, it has been challenging to coordinate and execute the recovery of foreign assets. Yet the Temporary Receiver, with the help of her team at H&K, has uncovered a dozen foreign corporations or entities, several plots of land, a development real estate project, and licenses or license applications to two mines in Guatemala. Further, H&K coordinated and facilitated a sensitive and complicated trip to Guatemala that resulted in the valuation of a mine the Receivership identified as an asset of South Aviation.

Progress continues to be made on the domestic front where H&K has expanded the Receivership to include JF Aircorp, [*See* ECF No. 114], arranged the public sale of an aircraft—another benefit to the Receivership Estates—and is in the process of devising a claims process to ensure equitable distribution of the Receivership Estates.

The above examples highlight both the variety and breadth of tasks and subject matters required in order to manage the Receivership.

### 2. *Novelty and difficulty of the questions presented.*

Due to the nature of this case, it was necessary for the Temporary Receiver to employ professionals that are experienced with fraud investigation, asset-tracing and recovery, Ponzi schemes, aviation law, international disputes, and bankruptcy, restructuring and creditors' rights. Assuming control of foreign entities and their accompanying assets has presented additional and novel legal and administrative barriers. For example, obtaining a Guatemalan tax identification number in order for the Temporary Receiver to transact in Guatemala on behalf of the foreign entities has required consultation with counsel in Guatemala. Additionally, legal issues regarding the mining licenses in Guatemala, including an investigation of El Pato GT, S.A., have further complicated the administration of the Receivership Estates.

In short, the questions presented in this matter have not been straightforward, but have rather required careful consideration and specialized know-how.

### 3. *Skill required to perform the legal services properly.*

In order to perform the services in connection with this matter, the Temporary Receiver's and H&K's skill and expertise across subject matters, practice specialties, languages, and even borders was required.

### 4. *Preclusion of other employment.*

The past two years have been H&K's most profitable, and this case has required significant time and work. In order to diligently address the issues and demands of this Receivership, the Temporary Receiver and her team at H&K have foregone billing for other matters that were certain to result in collected fees.

13

### 5. *Customary fees.*

What a lawyer charges his fee-paying clients "is powerful, and perhaps the best, evidence of his market rate." *Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1327 (S.D. Fla. 2015) (quoting *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000)); *see also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc*., 253 F.3d 1332, 1336-37 (11th Cir. 2001) (holding that the agreed upon billing rate is a strong indication of a reasonable rate but affirming the award of an hourly rate that exceeded that agreed upon billing rate because "the agreed-upon fee rate does not necessarily act as a cap or ceiling in determining the reasonable hourly rate"). The fees billed in this matter mirror what the Temporary Receiver's counsel at H&K charge other clients and, as such, are strong evidence of customary fees for their services.

### 6. *Fixed fee.*

The Temporary Receiver and her professionals' compensation will be based on fixed hourly rates subject to this Court's final approval. To date, neither the Temporary Receiver nor her team at H&K have received compensation for their services or reimbursement for their costs. As a result, the professionals have taken a substantial financial risk, and failure to recover their fees would place a tremendous burden on their practices.

### 7. *Time limitations.*

This matter has imposed time limitations on the Temporary Receiver and her professionals due to the types of assets involved. Indeed, the situation at MDP has been unpredictable and required fast action on several occasions. For example, H&K had to act quickly to prevent an onsite dam from overflowing at the MDP property following a monsoon storm, which is described in detail in the Temporary Receiver's Second Status Report. [*See* ECF No. 111]. Working under these time constraints has put additional stress on the Temporary Receiver and her team.

14

### 8.  Amount involved and results obtained.

Thus far, the Temporary Receiver has conferred a substantial benefit to the Receivership Estates by managing and protecting the Receivership's assets. As more fully described in the Temporary Receiver's Second Status Report, [ECF No. 111], a significant portion of the Temporary Receiver's time during this billing period has been devoted to limiting the Receivership liabilities and preserving its assets.

The Temporary Receiver and her professionals have, to date, uncovered various foreign assets, namely a dozen corporations or entities, several plots of land, a development real estate project, and licenses or license applications to two mines in Guatemala presumably funded by South Aviation and the Receivership Estates. More details regarding the valuation of assets will be provided in an upcoming interim status report.

Additionally, the Temporary Receiver and HV Pal Holdings, LLC ("HV Pal") will hold a public sale of an aircraft, a 1986 Bombardier Challenger C1-601-2A12, that will add value to the Receivership Estates.

Lastly, the Temporary Receiver and her attorneys will seek to administer a preliminary claims process that will ensure equitable distribution of the Receivership Estates and identify any net winners.

### 9.  Experience, reputation and ability of the attorney(s).

The Temporary Receiver and her counsel at H&K are established, experienced attorneys with substantial experience in the substantive areas of law required by this proceeding. The biographies and competencies of each H&K attorney are laid out in the Temporary Receiver's Response to Creditors' Opposition to First Application for Reasonable Fees and Reimbursement of Incurred Costs. [*See* ECF No. 105].

The principal attorney for the Temporary Receiver at Legalsa, Johann Hartleben, is experienced in corporate and real estate transactions and aviation law, which are all germane to the assets located in Guatemala. Mr. Hartleben is also recognized in Chambers and Partners for his work.

All retained professionals, as detailed above, were intentionally retained as experts in their respective fields and bring over 15 years of experience.

### 10. Undesirability of the case.

The Temporary Receiver and her professionals are privileged to be working for the benefit of this Receivership. Thus, this case is not undesirable.

### 11. Awards in similar cases.

The fees and costs submitted to the Court for consideration in the Second Application are similar to those awarded in other complicated cases for the same time and quantity of work, which the Temporary Receiver demonstrated in her Response to Creditors' Opposition to First Application for Reasonable Fees and Reimbursement of Incurred Costs. [*See* ECF No. 105].

In conclusion, having satisfied the *Johnson* factors, the Temporary Receiver and her team at H&K are entitled to their reasonable compensatory rates.

### H. The Hours Were Reasonably Expended.

To meet the second step of the lodestar approach, the fee applicant must provide specific and detailed evidence that will allow the court to accurately determine the amount of fees awarded. *Evans v. D. Cefalu Mgmt.*, 334 F. Supp. 3d 1277, 1282 (S.D. Fla. 2018) (quoting *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)). A litigant may support her fee by submitting chronological bills and invoices. *See Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1304 (S.D. Fla. 2015). To this end, the Temporary Receiver and her team at H&K have submitted their time

records and summaries, inclusive of dates, and thus have provided sufficient evidence to support

their fees, as well as all professionals retained to support the Receivership. *See* **Exhibits 2-8**.

WHEREFORE, the Temporary Receiver and her professionals respectfully request that

this Court enter an Order granting the Temporary Receiver's Second Application that (a)

authorizes compensation to the Temporary Receiver for $41,175.99; (b) authorizes a discounted

interim compensation to the Temporary Receiver's counsel, Holland & Knight, for $320,602.00;

(c) authorizes payment to the investigators, HD Investigative Group, for $4,161.00; (d) authorizes

compensation to Legalsa, local counsel in Guatemala, for $15,862.00; (e) authorizes payment to

R&H Restructuring for forensic asset tracing for $24,543.10; and (f) authorizes payment to Connor

and Winters, LLP for legal services in the concurrent bankruptcy proceeding pending in Oklahoma

for $3,151.90; and (g) authorizes expenses, *nunc pro tunc*, distributed to Broadlands, $22,984.00

for the site visit in order to conduct the processing plant appraisal.

## LOCAL RULE 7.1 CERTIFICATE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel hereby certifies that she submitted

a copy of this Application and conferred with the parties to this action. The WBIP Intervenors

represented that they do not oppose the requested relief herein. Counsel for Plaintiffs, CCUR, and

counsel for the Metrocity Intervenor, requested certain information from the Temporary Receiver

and her counsel before taking a position on the requested relief.

Dated: October 29, 2021

Respectfully submitted,

By:   *s/Sydney Alexander*
        Warren Gluck, *Pro Hac Vice*
        New York Bar No. 4701421
        Warren.Gluck@hklaw.com
        Holland & Knight LLP

17

31 West 52nd Street 12th Floor
New York, NY  10019
Telephone: (212) 513-3200
Facsimile: (212) 385-9010

Sydney B. Alexander
Florida Bar No. 1019569
Sydney.Alexander@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 29th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served on this day on counsel identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

  *s/Sydney Alexander*
Sydney B. Alexander

**SERVICE LIST**

| | |
|---|---|
| Jonathan Bart Morton<br>jonathan.morton@klgates.com<br>Stephen Allan McGuinness<br>stephen.mcguinness@klgates.com<br>K&L Gates LLP<br>Southeast Financial Center<br>200 S Biscayne Boulevard, 39th Floor<br>Miami, FL 33131-2399<br>Telephone: (305) 539-3357<br>Facsimile: (305) 358-7095<br>*Counsel for CCUR Holdings, Inc.*<br>*and CCUR Aviation Finance, LLC* | Christopher A. Brown<br>chris.brown@klgates.com<br>David Weitman<br>david.weitman@klgates.com<br>K&L Gates, LLP<br>1717 Main Street, Suite 2800<br>Dallas, TX 75201<br>Telephone: (214) 939-5500<br>*Counsel for CCUR Holdings, Inc.*<br>*and CCUR Aviation Finance, LLC* |
| John Arrastia, Jr.<br>jarrastia@gjb-law.com<br>Paul Joseph Battista<br>pbattista@gjb-law.com<br>Genovese Joblove & Battista, P.A.<br>100 S.E. 2nd Street, 44th Flr.<br>Miami, FL 33131<br>Telephone: (305) 349-2329<br>Facsimile: (305) 428-8832<br>*Counsel for Metrocity Holdings, LLC* | Peter Harlan Levitt<br>plevitt@shutts-law.com<br>Shutts & Bowen<br>201 S Biscayne Boulevard<br>Suite 1500 Miami Center<br>Miami, FL 33131<br>Telephone: (305) 358-6300<br>Facsimile: (305) 415-9847<br>*Counsel for WBIP Aviation One, LLC*<br>*and WBIP Aviation Two, LLC* |
| Gabriel Hertzberg<br>ghertzberg@curtis.com<br>Curtis, Mallet-Prevost, Colt & Mosle, LLP<br>101 Park Avenue<br>New York, NY 10178<br>Telephone: (212) 696-8856<br>Facsimile: (917) 368-7356<br>*Counsel for WBIP Aviation One, LLC*<br>*and WBIP Aviation Two, LLC* | South Aviation, Inc.<br>1470 Lee Wagoner Blvd, Suite 100<br>Fort Lauderdale, FL 33315<br>*Pro Se* |
| | Federico A. Machado<br>1470 Lee Wagoner Blvd., Suite 100<br>Fort Lauderdale, FL 33315<br>*Pro Se* |
| Eduardo F. Rodriguez<br>eddie@efrlawfirm.com<br>EFR Law Firm<br>1 Alhambra Plaza, Suite 1225<br>Coral Gables, Florida 33134<br>Office: (305) 340-0034<br>Mobile: (305) 978-9340<br>*Counsel for HV Pal Holdings, LLC* | Gerard S. Catalanello<br>Gerard.Catalanello@alston.com<br>Kimberly J. Kodis<br>Kimberly.Kodis@alston.com<br>Alston & Bird LLP<br>90 Park Avenue<br>New York, New York 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br>*Counsel for HV Pal Holdings, LLC* |