**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-60462-BLOOM/Valle**

CCUR AVIATION FINANCE, LLC and
CCUR HOLDINGS, INC.,

    Plaintiffs,

v.

SOUTH AVIATION, INC. and
FEDERICO A. MACHADO,

    Defendants.
_____/

**ORDER GRANTING INTERVENOR PLAINTIFF METROCITY
HOLDINGS, LLC'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST
DEFENDANTS FEDERICO MACHADO AND SOUTH AVIATION, INC.**

**THIS CAUSE** is before the Court upon Intervenor Plaintiff Metrocity Holdings, LLC's ("Metrocity") Motion for Final Default Judgment against Defendants South Aviation, Inc. ("South Aviation") and Federico A. Machado ("Machado") (collectively, "Defendants"), ECF No. [158] ("Motion"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Metrocity's Motion is granted.

**I. BACKGROUND**

Intervenor Plaintiff Metrocity filed its Complaint against the Defendants South Aviation and Machado on April 16, 2021. *See* ECF No. [46]. At the time, due to Machado's fugitive status and South Aviation's retention of Machado as its sole officer or director, constructive service was needed to serve the Defendants. Metrocity served South Aviation through the Florida Secretary of State. Following this Court's Order permitting alternate service of process, ECF No. [95], Metrocity thereafter served Machado by publication. Metrocity served process on South Aviation

and Machado on July 8, 2021, and September 6, 2021, respectively. Defendants failed to plead or otherwise defend the action following the passage of twenty-one (21) days from the date of service. On October 22, 2021, Metrocity moved for a clerk's entry of default against Defendants, which the Clerk of Court granted the same day. To date, Defendants have neither moved to set aside the clerk's default nor filed any other paper in response to this Court's orders.

On the same day that Metrocity filed its Complaint, the Court entered an Order placing South Aviation into receivership and appointing a Temporary Receiver. ECF No. [43] ("Receivership Order"). The Receivership Order was entered for the benefit of South Aviation's creditors with claims in excess of $500 million. Pursuant to Section 32 of the Receivership Order, all litigation against South Aviation, among others, was stayed except for this action. Accordingly, Metrocity's Motion is not precluded by reason of the Receivership Order. Metrocity filed the instant Motion for final default judgment against Defendants.

**II. LEGAL STANDARD**

Under Rule 55 of the Federal Rules of Civil Procedure, after the Clerk of Court enters default against the defendants and the defendants fail to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against the defendants. Fed. R. Civ. P. 55(b)(2). But "[b]efore entering default judgment, the court must ensure . . . that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted." *Westgate Resorts, Ltd. v. Castle Law Grp.*, No. 6:17-cv-1063-Orl-31DCI, 2020 WL 264676, at *1 (M.D. Fla. Jan. 2, 2020). If the Court finds that the plaintiff has adequately stated claims for relief, it must next determine the "amount and character of damages to be awarded." *See Rodriguez v. Italian Cabinetry, Inc.*, No. 1:18-CV-24881-KMM, 2019 WL 11590238, at *1 (S.D. Fla. Aug. 29, 2019) (quotations omitted).

"Following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." *Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) (quoting *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005)). "After ascertaining the appropriate amount of damages, the Court must enter final judgment in that amount." *Fagan v. Cent. Bank of Cyprus*, No. 19-80239-CIV, 2021 WL 2845034, at *3 (S.D. Fla. June 28, 2021).

### III. DISCUSSION

**A. Liability**

As an initial matter, because Defendants have defaulted, they have admitted the truth of the complaint's well-pleaded allegations. *See Ordonez v. Icon Sky Holdings LLC*, No. 10-60156-CIV, 2011 WL 3843890, at *5 (S.D. Fla. Aug. 30, 2011) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)). In its Complaint, Metrocity alleges a multi-faceted Ponzi scheme revolving around the buying, selling, and financing of airplanes. Metrocity is in the business of, among other things, financing the purchase of aircraft. ECF No. [46] ¶ 1. South Aviation, through Machado, approached Metrocity, representing itself to be a prospective purchaser of several aircraft who needed financing to fund the necessary escrow deposits. *Id.* Relying on Defendants' representations, Metrocity signed agreements with South Aviation and Machado and provided, in total, $29 million in financing to Defendants with the intent that the monies be used to fund the escrow deposits. *Id.* According to the agreements, after Metrocity wired the deposits, South Aviation would refund, or direct the escrow agent to refund, the deposits back to Metrocity. *Id.* As part of the scheme, South Aviation signed two promissory notes, one in 2019 and one in 2020, by which it promised to pay Metrocity the amounts loaned for the escrow deposits, plus interest

accrued. *Id.* Machado, as owner of South Aviation, personally guaranteed the full amounts of the promissory notes by executing and delivering guaranty agreements to Metrocity in each of 2019 and 2020. Notwithstanding the apparent legitimacy of the transactions, the deal was in fact a sham with no intention of repaying the loaned funds. To further conceal the true objectives of the scheme, Defendants and others would launder Metrocity's monies into foreign investments. Seeking redress for its injuries, Metrocity alleges eight counts of relief: (a) civil RICO, 18 U.S.C. § 1962(c); (b) conspiracy to violate civil RICO, 18 U.S.C. § 1962(d); (c) fraud; and (d) four claims of breach of contract; and (e) unjust enrichment. After reviewing the factual allegations in the Complaint, the Court concludes that Metrocity has set forth a sufficient basis to enter final default judgment jointly and severally against Defendants for all eight counts.

**B. Damages**

In its Complaint, Metrocity seeks relief in the form of compensatory damages, treble damages, punitive damages, pre-judgment interest, and post-judgment interest.[1] Metrocity's Complaint, taken as true, establishes entitlement to all requested damages.

*i. Compensatory Damages*

Whether its claims are styled under RICO, fraud, breach of contract, or unjust enrichment, Metrocity sustained $29 million in compensatory damages stemming from the amount of money it provided to South Aviation. *See* ECF No. [46] ¶¶ 50, 60, 68, 74, 80, 86, 92, 98. Had the Defendants not induced Metrocity to enter into the promissory notes and guaranties, then Metrocity would not have lost $29 million. Metrocity is entitled to $29 million of compensatory damages.

---

[1] Metrocity has elected not to seek recovery of its attorneys' fees and costs in this matter.

ii. *Treble Damages*

Pursuant to 18 U.S.C. § 1964(c), an injured party is automatically entitled to recover "threefold the damages" it sustains for a RICO violation. "This damages award is mandatory." *Watchous Enters., LLC v. Pac. Nat'l Cap.*, No. 16-1432-DDC, 2021 WL 4399493, at *3 (D. Kan. Sept. 27, 2021). Threefold of $29 million is $87 million. After subtracting the $29 million of compensatory damages already to be awarded,[2] Metrocity is entitled to a remaining treble damages award of $58 million.[3]

iii. *Punitive Damages*

A request for punitive damages generally requires an evidentiary hearing on damages. *See Nygard v. Jasper*, No. 8:15-CV-1939-T-33EAJ, 2016 WL 9526666, at *6 (M.D. Fla. Jan. 4, 2016). However, there is no need for a hearing "where the record sufficiently supports the [punitive] damages award." *See Cutcliff v. Reuter*, No. 2:06-CV-04123-NKL, 2014 WL 229179, at *2 (W.D. Mo. Jan. 21, 2014).[4] "In rendering a punitive damages award, a trial court evaluates '(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable

---

[2] *See Wilber v. Top Glob. Cap.*, No. SACV121448AGJPRX, 2013 WL 12142603, at *2-3 (C.D. Cal. Dec. 2, 2013); *Allstate Ins. Co. v. Nazarov*, No. 11 CV 6187 PKC VMS, 2015 WL 5774459, at *19 (E.D.N.Y. Sept. 30, 2015).

[3] *See Mallory v. Chandler*, No. 3:06-CV-00487-ECRRAM, 2009 WL 3202385, at *4 (D. Nev. Sept. 30, 2009) (noting that "[s]everal courts of appeals have affirmed an award of treble damages pursuant to RICO in a default judgment action" (citing *D'Orange v. Feely*, 101 F.3d 1393 (2d Cir. 1996) (Table); *Jones v. Phipps*, 39 F.3d 158, 161 (7th Cir. 2004))).

[4] *See, e.g.*, *Cutcliff v. Reuter*, No. 2:06-CV-04123-NKL, 2014 WL 229179, at *2 (W.D. Mo. Jan. 21, 2014) (awarding punitive damages without hearing in case involving a Ponzi scheme); *see also Ensley v. Gene's Wrecker Serv., Inc.*, No. 3:16CV713-MCR-CJK, 2019 WL 1063392 (N.D. Fla. Feb. 4, 2019) (awarding punitive damages under Florida law without the need for a hearing); *Earthlink, Inc. v. Log On Am. Inc.*, No. 1:02-CV-1921-JOF, 2006 WL 1835426, at *4 (N.D. Ga. June 30, 2006) (noting that "[p]unitive damages are available in a default judgment" and awarding punitive damages without a hearing); *James v. Frame*, 6 F.3d 307, 309-11 (5th Cir. 1993) (holding that district court did not abuse its discretion when awarding punitive damages without a hearing).

cases.'" *In re Diamond Tr. u/a/d 10/28/2005*, No. 16-CV-81923, 2021 WL 2404337, at *9 (S.D. Fla. May 10, 2021) (internal quotation marks omitted).

Here, each factor supports an award of punitive damages. Defendants' conduct was reprehensible in that they intentionally and repeatedly violated federal law and state law by operating a multi-year Ponzi scheme that induced Metrocity and others to deposit, collectively, "hundreds of millions of dollars" in the purported purchases of imaginary aircrafts. ECF No. [1] ¶ 10. As to the disparity factor, "Florida courts have held that single-digit multipliers are likely to comport with due process while still achieving the State's goals of deterrence and retribution." *See Pinnacle Fin. Grp., Inc. v. TriStar Acceptance, LLC*, No. 16-62169-CIV, 2017 WL 7355331, at *2 (S.D. Fla. July 17, 2017). For purposes of staving off any possible Due Process challenge, Metrocity requests that this Court award it a 3:1 ratio of punitive damages to compensatory damages—that is, $87 million. *Cote v. Philip Morris USA, Inc.*, 400 F. Supp. 3d 1295, 1308 (M.D. Fla. 2019).[5] "[E]ven though [the] compensatory damages [are] already substantial," in light of "the Defendants' reprehensibility," a punitive damages award would still comport with Due Process standards. *See id.* at 1309. The third factor—the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases—also weighs in favor of a punitive damages award in this case because "in Florida, '[i]n comparable cases, the civil penalty is often three times the compensatory award.'" *See Cote*, 400 F. Supp. 3d at 1309 (quoting *Schoeff*, 232 So. 3d at 308) (citing Fla. Stat. § 768.73(1)(a)(1)). For the fraudulent

---

[5] The courts in the Eleventh Circuit, as well as Florida courts, have upheld similar proportions of punitive damages awards. *See, e.g.*, *Cote v. Philip Morris USA, Inc.*, 400 F. Supp. 3d 1295, 1308 (M.D. Fla. 2019) (finding that an award of $20.7 million in punitive damages and $6.25 million in compensatory damages––or a ratio of 3.3 to 1—was not excessive in a case involving fraud); *Ensley v. Gene's Wrecker Serv., Inc.*, No. 3:16CV713-MCR-CJK, 2019 WL 1063392 (N.D. Fla. Feb. 4, 2019) (awarding a punitive damages ratio of 2.88 to 1 for conversion); *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 307 (Fla. 2017) (upholding $30 million punitive damage award, which was three times the amount of compensatory damages in an *Engle* progeny case).

inducement that the Defendants perpetrated, a punitive damages award of $87 million is appropriate.

### iv. Pre-judgment Interest

Metrocity is entitled to pre-judgment interest as to its federal law and state law claims. For Metrocity's federal law claims, "a pre-judgment interest award is appropriate given that [Metrocity's] Florida law claims entitle [it] to pre-judgment interest." *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2017 WL 8772158, at *2 (M.D. Fla. Feb. 16, 2017). "In Florida, 'a plaintiff is entitled to prejudgment interest as a matter of law.'" *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1303 (S.D. Fla. 2016) (quoting *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007); *see also Wiand v. Dancing $, LLC*, 578 F. App'x 938, 947 (11th Cir. 2014). Thus, Metrocity is entitled to pre-judgment interest for its federal law and state law claims.

The promissory notes dictate the rate of pre-judgment interest. *See* Restatement (Second) of Contracts § 352 cmt. a (1981) ("If the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contract duty that is enforceable as is any other such duty . . . ."). According to the promissory notes, once South Aviation defaulted from the note, it "shall bear interest at a rate equal to the maximum rate permissible under Florida law." ECF Nos. [158-2] at 3; [158-3] at 3. This rate was defined as the "Default Rate." *Id.* Likewise, the guaranties referred to the default rate used in the promissory notes in computing the rate that interest will be charged to Machado under the guaranties in the event of default. ECF Nos. [158-4] at 2; [158-5] at 2. In this situation, the maximum rate allowed under Florida law is 25% per annum. *See* Fla. Stat. §§ 687.03(1), 687.071(2); *see also PNC Bank v. Dick Stark's Carpet Shop, Inc.*, No. 3:13-CV-0218-J-39JBT, 2014 WL 12569437, at *2 n.2 (M.D. Fla. Mar. 21, 2014).

For contract actions, "prejudgment interest accrues from the date payment was due under the contract." *FDIC v. Attorneys' Title Ins. Fund, Inc.*, No. 12-23599-CIV, 2015 WL 11784950, at *3 (S.D. Fla. Mar. 11, 2015). Here, the 2019 Note in the amount of $9 million matured and was due on March 13, 2021. ECF No. [46] ¶¶ 24, 77. As of December 31, 2021, 293 days had elapsed since the 2019 Note matured and Defendants defaulted thereon. Applying the annual default interest rate of 25% to the outstanding balance of $9 million on the 2019 Note for a period of 293 days results in $1,806,163.38 of pre-judgment interest as of December 31, 2021. In addition, the 2020 Note in the amount of $20 million matured and was due on April 13, 2021. As of December 31, 2021, 262 days had elapsed since the 2020 Note matured and the Defendants defaulted thereon. ECF No. [46] ¶¶ 28, 89. Applying the annual default interest rate of 25% to the outstanding balance of $20 million on the 2020 Note for a period of 262 days results in $3,589,041.10 of pre-judgment interest as of December 31, 2021. Therefore, the aggregate sum of pre-judgment interest on the 2019 Note and the 2020 Note equals $5,395,204.48 as of December 31, 2021. Moreover, that amount is subject to an aggregate per diem increase of $19,863.01 for each day between January 1, 2022 and the date that the final default judgment is entered.

Following a review of the Motion, the Complaint, and any other pertinent documents, the Court concludes that Metrocity may recover $5,395,204.48 in pre-judgment interest. In addition, that amount is subject to a per diem increase of $19,863.01 for each day between January 1, 2022 and the date that the judgment is entered.

### *v. Post-judgment Interest*

Generally, post-judgment interest in federal question cases is determined according to the federal post-judgment rate under 28 U.S.C. § 1961. *In re Trigeant Holdings, Ltd.*, 523 B.R. 273, 278 (Bankr. S.D. Fla. 2015). However, parties may contract around Section 1961 if the parties'

8

agreement includes "language clearly, unambiguously, and unequivocally stating the parties' intent to bypass § 1961." *Id.* at 279. The promissory notes provide unequivocal language indicating the parties' intent to contract away from Section 1961. Each note stated that "following any judgment obtained by [Metrocity] in connection with [South Aviation]'s failure to pay this Note when due, interest shall continue to accrue at the Default Rate." ECF Nos. [158-2] at 3; [158-3] at 3. Similarly, as previously mentioned, the guaranties referred to the default rate defined in the promissory notes to establish that Machado had to pay at that default rate. Therefore, the Court will award Metrocity post-judgment interest that will accrue at 25% per annum.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Intervenor Plaintiff Metrocity Holdings, LLC's Motion for Final Default Judgment, **ECF No. [158]**, is **GRANTED** as to Defendants South Aviation, Inc. and Federico A. Machado.

2. Intervenor Plaintiff Metrocity Holdings, LLC is entitled to and shall recover from Defendants South Aviation, Inc. and Federico A. Machado jointly and severally damages as follows:

    (a) Compensatory damages of $29,000,000.00;

    (b) Treble damages of $58,000,000.00;

    (c) Punitive damages of $87,000,000.00;

    (d) Pre-judgment interest of $5,395,204.48 as of December 31, 2021, which will continue to accrue at a per diem rate of $19,863.01 from and after January 1, 2022 through the date of the Final Default Judgment; and

    (e) Post-judgment interest that will accrue at 25% per annum from and after the entry of the Final Default Judgment.

3. The above damages amounts are separate and apart from the damages awarded to Plaintiffs CCUR Aviation Finance, LLC and CCUR Holdings, Inc. See ECF Nos. [62]; [65].

4. Pursuant to the Court's Order Appointing Temporary Receiver Over Defendant South Aviation, Inc., pending further order of this Court, this Court shall retain jurisdiction over this matter for purposes of enforcing the terms of that Order.

5. Pursuant to Federal Rule of Civil Procedure 58, the Court will separately enter a Final Default Judgment.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 25, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record