**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-60462-BLOOM/Valle

CCUR AVIATION FINANCE, LLC and
CCUR HOLDINGS, INC.,

       Plaintiffs,

v.

SOUTH AVIATION, INC. and
FEDERICO A. MACHADO,

       Defendants.

_____/

**<u>TEMPORARY RECEIVER'S FIFTH STATUS REPORT</u>**

**I.**   **INTRODUCTION**

Barbara Martinez, Esq., the Court-appointed Temporary Receiver, (the "<u>Temporary Receiver</u>") for South Aviation, Inc. ("<u>South Aviation</u>") and its respective affiliates, subsidiaries, successors, and assigns (excluding Defendant Federico A. Machado individually) (collectively, the "<u>Receivership Estates</u>" or the "<u>Receivership</u>") hereby files this Fifth Status Report and informs the Court, Plaintiffs CCUR Aviation Finance, LLC ("<u>CCURA</u>"), and CCUR Holdings, Inc. ("<u>CCURH</u>" and collectively with CCURA, the "<u>Plaintiffs</u>"); WBIP Aviation One, LLC and WBIP Aviation Two, LLC ("<u>WBIP Intervenors</u>"); Metrocity Holdings, LLC ("<u>Metrocity Intervenor</u>"), and all other parties who have appeared in this action, of her activities and expenses incurred from February 11, 2022 to date ("<u>Reporting Period</u>"), as well as her plans going forward. On May 2, 2022, the Court granted the Temporary Receiver's second request to extend the Receivership until October 16, 2022. In light of this extension, the Temporary Receiver will continue to document the various efforts to provide timely information to the Court and interested creditors of the

Receivership Estates, pursuant to her duties under the Order appointing her Temporary Receiver dated April 16, 2021 ("Appointment Order").

## II.     PRELIMINARY STATEMENT

Since the Fourth Status Report was filed, the Temporary Receiver has primarily focused on developing and solidifying a viable litigation strategy given the Receivership's limited funding and resources. Nevertheless, the Temporary Receiver has continued to determine the strengths of any potential domestic claims which could be pursued—and considered the priority with which to further investigate and pursue such claims, considering the cost and time involved and potential outcomes—along with the continued sale of assets and investigation of potential claims in Guatemala.

Following the approved Claims Process and notice thereof, the Temporary Receiver and her counsel received a total of twenty-seven (27) claim submissions asserting close to US $350M in liability. As the Temporary Receiver continues to identify the potential "net winners" of the estate, final claims adjudication would be premature at this time.

The Temporary Receiver also successfully reached an agreement for the sale of the Receivership's only domestic asset, an aircraft, which took place on April 8, 2022, resulting in US $200,000 for the Receivership.

With regard to the foreign aspects of the Receivership, the Temporary Receiver and her counsel have successfully sold a production line and concrete plant previously maintained by MDP. The Temporary Receiver's team has frequent contact with their consultant in Guatemala who helps preserve MDP and related assets. Likewise, work is being done to sell the DII blueprint and real property. On the tax front, ongoing efforts are being made to bring MDP into compliance with its Guatemalan tax reporting obligations and resolve related issues. As for El Pato, the

Temporary Receiver and her team are presently unaware of any new activity in the related criminal case. Finally, the Temporary Receiver and her team have diligently advised any previous MDP-affiliates of the Receivership's jurisdiction over the asset.

A detailed summary of the Temporary Receiver's activities and recommendations over the Reporting Period are set forth below.

## III.   RECEIVERSHIP ESTATES

As permitted by the Court, the Receivership now includes the domestic entity, JF Aircorp, Inc., [ECF No. 114], and as identified in previous status reports, two Guatemalan entities, Minas del Pueblo, S.A. and Desarrollos Inmobiliarios Izabal, S.A. The Temporary Receiver continues to make efforts to obtain formal title to El Pato GT, S.A.

The Temporary Receiver continues to search for and identify additional entities that would best serve the Receivership.

## IV.   PENDING LITIGATION ISSUES

1. <u>Default Judgments Entered in this Action</u>

The Temporary Receiver and her counsel have been carefully researching issues relating to default judgments in this action. *See* [ECF Nos. 14, 16, 26, 31, 47, 62, 65, 120, 123, 127, 129, 158, 161, 162]. As the Court is aware, CCUR and Metrocity Intervenor pursued default judgments against South Aviation on the premise that (i) South Aviation failed to appear and defend the Action; and (ii) the Appointment Order permits such relief. Nonetheless, it is undisputed that the Temporary Receiver stands in the shoes of South Aviation and all entities placed under her custody and control. It is also clear that, effective as of the April 16, 2021 Appointment Order, [ECF No. 43], the Temporary Receiver appeared in the action for South Aviation and all of the Receivership Estates.

The Temporary Receiver has notified all parties and those who have submitted claims of her concerns regarding default judgments. She and her counsel have also engaged and continue to engage in communications with CCUR and Metrocity Intervenor regarding potential agreement and recommendations to the Court regarding their respective default judgments.

2.   Existence of Claims and Potential Third Party Litigation

Following the Court's extension of the Receivership, [ECF No. 184], the Temporary Receiver and her team are resuming and pursuing a targeted but aggressive investigation to secure documents and testimony from potential bad actors, net winners, friends and family of Defendant Machado, financial institutions, and others. This phase is critical to support the execution of any potential third party litigation. Importantly, to date, all of the presently identified net winners and core potential defendants are based in the United States. The potential avenues of claims and recovery for the Receivership, in addition to the liquidation of assets identified above, are as follows:

a) *Net Winners Claims:* The forensic analysis conducted thus far has revealed a litigation interest of "net winner" proceeds. This case is somewhat atypical in terms of the volume of cash flow and the length of scheme, which respectively totals billions of dollars of circulated money between relevant entities. The Temporary Receiver and her team are still in the process of receiving and analyzing financial records, therefore, the forensic analysis is incomplete.

b) *Tort Claims:* the Temporary Receiver has a litigation interest via tort claims against those who are responsible for the losses to the Receivership. As a result, the Temporary Receiver is requesting and reviewing documents, vetting a number of legal theories to determine the likelihood of success on the merits, and considering potential recovery and funding. This cost-benefit analysis is ongoing for the following legal claims: fraud, fraudulent transfer, fraudulent

conveyance, negligence, breach of contract, breach of fiduciary duty, unjust enrichment, aiding and abetting for recovering misappropriated assets through claw back of ill-gotten gains, among other claims not yet identified at this stage of the investigation.

c) *Wright Brothers Aircraft Title, Inc. Insurance Claims:* The Temporary Receiver filed a proof of claim for Wright Brothers Aircraft Title, Inc.'s ("WBAT") liability to the Receivership Estates, alleging damages in the approximate amount of US $400,000,000 in *In re Wright Brothers Aircraft Title, Inc.,* the concurrent bankruptcy proceeding pending in the Western District of Oklahoma; 5:21-BK-10994.

d) *Professional Claims:* The Temporary Receiver has a potential litigation interest in certain negligence and recklessness claims against professional firms, including but not limited to, financial institutions.

V.    **CLAIMS PROCESS**

As set forth in previous filings with this Court, including the Temporary Receiver's Fourth Status Report, the date by which the Temporary Receiver requested submission of claims was January 27, 2022. The Temporary Receiver received a total of twenty-seven (27) claims, asserting liability in the approximate aggregate amount of **US $349,600,000**. The Temporary Receiver completed an initial evaluation of the filed claims for technical compliance with the claims process as outlined in the *Legal Notice of Claims Administration Process* and as approved by Order of this Court dated December 6, 2021. *See* [ECF Nos. 145-1 and 148]. Notice of receipt of claims was provided by the Temporary Receiver to counsel for each claimant that submitted timely proofs of claim. Additionally, the submitted proofs of claim are being analyzed in parallel with the Temporary Receiver's analysis of potential "net winners" of the estate. In light of the ongoing

investigation and efforts to recover estate assets, final claims adjudication at this time would be premature but will be completed in due course, as described in greater detail below.

## VI.    DOMESTIC RECOVERY

Since the Fourth Status Report was filed on February 10, 2022, [ECF No. 174], the Temporary Receiver and her team have continued their investigation and have continued to hone a litigation strategy.

1.    Assets within the Receivership's Control

    *a.  Aircraft - Serial Number 3064 and N-registration N28FM*

Pursuant to the Stipulation By and Between HV Pal Holdings, LLC and Temporary Receiver for South Aviation, Inc. and the Receivership Estates (the "Stipulation"), [ECF No. 113; Ex. B], which was approved by this Court on October 6, 2021, [ECF No. 114], counsel for the Temporary Receiver and HV Pal created a bidding procedure and public sale for the 1986 Bombardier Challenger Cl-601-2A12, bearing U.S. manufacturer's serial number 3064 and Federal Aviation Administration Registration Mark N28FM, collectively with all it had installed, incorporated or attached, its accessories, parts and equipment, including the airframe, two (2) General Electric model CF34-3A engines bearing serial numbers 350230 and 350235, and any auxiliary power unit (the "Aircraft"). Business Aircraft Sales Corporation ("BASC"), the retained aircraft dealer, pursuant to and in accordance with the terms and conditions of the Stipulation, accepted bids for the sale of the Aircraft from February 22, 2022 and until March 24, 2022. The Notice of the Public Sale was published on the Receivership website as well as the BASC listing page.

Pursuant to Section 4.3 of the Stipulation, [ECF No. 113-2], on April 8, 2022, the Temporary Receiver sold the Aircraft to AC601 LLC, an assignee and designee of HV Pal

Holdings, LLC and, as a result, the Receivership received **US $200,000.00** for the sale of the Aircraft.

2. Ongoing Investigation

  a. *Document Review/Witness Interviews*

The Temporary Receiver and her counsel have reviewed more than 72,000 documents, conducted certain interviews, pursued and obtained additional bank discovery, prepared a timeline, identified key parties, and created a preliminary investigation and litigation strategy. The Receivership team continued certain investigative steps in balance with the previously-approaching deadline to renew or terminate this Receivership—being mindful of the costs of undertaking additional investigative efforts at that time. The team continued to conduct research into entities and individuals associated with Defendants, including friends, family, and service providers, in order to locate reliable contact information and prioritize interviews and other discovery steps. The team also interviewed certain prior service providers of South Aviation and obtained additional documents. Those documents have been reviewed and added to a database. From that information, the investigative team prepared a macro timeline of events and facts, as well as a list of relevant entities and individuals, which are updated as investigative efforts continue. In addition, the investigative team prepared a micro timeline of events and facts focusing on certain entities and individuals the team has identified as of particular interest.

  b. *Subpoenas*

As discussed in the Fourth Status Report, the investigative team has prepared a series of additional subpoenas to third party entities who conducted business and engaged in transactions with South Aviation and its affiliates. The Temporary Receiver has made the strategic decision to serve these subpoenas only after gathering more complete information regarding the third party entities and their dealings with Machado. However, these subpoenas, once served, will assist in

furthering the investigation. The investigative team also plans to conduct additional interviews with key players, analyze requested discovery, and supplement both the macro and micro timelines to close any gaps in the investigation.

## VII.   FOREIGN RECOVERY

The Temporary Receiver and her team continue to make efforts to identify, preserve, and sell assets in Guatemala. Below is an account of updates organized by entity. Previously, a detailed factual and procedural background was provided in the Temporary Receiver's First 30-Day Report. *See* [ECF No. 52].

1. Minas del Pueblo, S.A. ("MDP")

   *a.  Liquidation of MDP's Assets*

During the Reporting Period—specifically, on or around March 8, 2022—the Temporary Receiver and her team sold a production line and concrete plant, which belonged to MDP for **US $240,000.00** The details of the sale are below:

| Description | Brand | Model | Price (USD) |
|---|---|---|---|
| Concrete plant | Rometa | 2010-50 | $140,000 |
| Block production line | Rometa | 1000F | $100,000 |

The efforts required from the Temporary Receiver and her team to sell this equipment were herculean. First, it took some time to find an interested buyer because of the equipment's size and specialized nature. The equipment had been outdoors for some time before the Temporary Receiver was appointed or could secure its proper covering. As a result, some parts needed repair.

Second, the Temporary Receiver's team closed a deal and entered into an agreement with a prospective buyer in February 2022. The buyer then refused to make payment to the

8

Receivership's bank account in Miami and requested payment be made to a local account in Guatemala. The sale ultimately fell through.

Third, the Temporary Receiver's team threatened the first buyer with legal action while at the same time securing a sale to a second buyer. The sale was finally closed on March 14, 2022, and the final acquirer picked up the equipment on March 23, 2022. Under Guatemalan law, the proceeds obtained from the sale of the equipment must be allocated to cover MDP's liabilities. This requirement is aligned with the Receivership's best interest in preserving its most valuable asset as of today, namely, MDP's processing plant. As a result, all the proceeds obtained from the sale will be allocated to cover MDP's expenses in Guatemala as addressed below.

### b.  Maintenance and Care Expenses for MDP

Every week, the Receivership incurs costs to operate and maintain MDP which are mostly covered by funds obtained from the sale of MDP's assets. The Temporary Receiver and her team work to keep these expenses to a minimum, secure payment of these expenses, and monitor the asset to ensure it is well preserved and maintained. Performing these tasks for the care and maintenance of MDP is critical to comply with the Court's directive to preserve the value of South Aviation's property. [ECF No. 43], ¶¶ 7.E, 8.G.

MDP's most valuable asset is an ore processing plant. The plant also has a laboratory, a kitchen, several houses for MDP's personnel, an office, greenhouses, equipment and machinery, and multiple trucks, excavators, motorbikes and other vehicles—all of which are located at MDP's premises in Alta Verapaz, Guatemala. As explained in previous status reports, the added challenges posed by MDP's remote location and limited accessibility have made liquidating MDP's assets more difficult. Every week, the Temporary Receiver's team has someone review MDP's inventory onsite and report it is complete.

Additionally, the Temporary Receiver's team consults and liaises with Jeffrey Bremermann, the Temporary Receiver's foreign consultant. Mr. Bremermann's role in Guatemala includes the weekly delivery of monetary contributions to the local communities who assist in preserving the asset, as well as diesel and gasoline to keep the lights on and the equipment running at MDP's premises; communicating with and keeping the local communities and authorities apprised of major developments (including any upcoming visits to the mine); informing the Temporary Receiver and her team of any developments related to MDP; and generally assisting with the preservation of the asset. Mr. Bremermann has been instrumental in securing the sale of some of MDP's assets, for which he has received a commission. The Temporary Receiver and her professionals oversee and direct Mr. Bremermann's day-to-day tasks in Guatemala and they maintain daily communication.

Aside from Mr. Bremermann, various employees attend to the assets located on MDP property. During the Reporting Period, a member of the staff involved in the mine's upkeep, Johnny Fornos, left MDP and Guatemala. Mr. Fornos was the last mining expert assisting the Temporary Receiver and her team at MDP. Two other professionals remain onsite, Gerbert Oliverio and Oscar Elias.

The following payments were incurred and disclosed in the Fourth Status Report but have been paid during this Reporting Period.

| Description | Amount (USD) | Date the Expense Was Incurred (On or About) | Date Receivership Reimbursed J. Bremermann |
|---|---|---|---|
| Operating and maintenance expenses for the week of December 6. | 6,771.00 | December 7, 2021 | March 14, 2022 |
| Operating and maintenance expenses for the week of December 13. | 6,771.00 | December 14, 2021 | March 22, 2022 |

| Operating and maintenance expenses for the week of December 20. | 6,771.00 | December 21, 2021 | March 31, 2022 |
|---|---|---|---|
| Operating and maintenance expenses for the week of December 27. | 6,771.00 | December 28, 2021 | April 4, 2022 |
| Operating and maintenance expenses for the week of January 3. | 6,771.00 | January 4, 2022 | April 12, 2022 |
| Operating and maintenance expenses for the week of January 10. | 6,771.00 | January 11, 2022 | April 12, 2022 |
| Operating and maintenance expenses for the week of January 17. | 6,771.00 | January 18, 2022 | April 12, 2022 |
| Total | **47,397.00** | | |

Additionally, during the Reporting Period, the Receivership has incurred operating and maintenance expenses in connection with MDP's processing plant of around US $69,248.63.

| Description | Amount (USD) | Date the Expense Was Incurred (On or About) | Date Receivership Reimbursed J. Bremermann |
|---|---|---|---|
| Operating and maintenance expenses for the week of January 24. | 1,700.00 | January 25, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of January 31. | 1,700.00 | February 1, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of February 7. | 1,700.00 | February 8, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of February 14. | 1,700.00 | February 15, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of February 21. | 3,587.46 | February 22, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of February 28. | 1,700.00 | March 1, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of March 7. | 1,700.00 | March 8, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of March 14. | 6,611.00 | March 15, 2022 | May 6, 2022 |

| | | | |
|---|---|---|---|
| Operating and maintenance expenses for the week of March 21. | 5,811.00 | March 22, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of March 28. | 5,811.00 | March 29, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of April 4. | 5,811.00 | April 5, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of April 11. | 5,811.00 | April 12, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of April 18. | 5,811.00 | April 19, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of April 25. | 5,811.00 | April 26, 2022 | May 6, 2022 |
| Operating and maintenance expenses for the week of May 2. | 5,811.00 | May 3, 2022 | May 6, 2022 |
| Commission for sale of block maker and cement maker. | 6,000.00 | April 26, 2022 | May 6, 2022 |
| Warehouse Mi Bodega 2021. | 575.98 | November and December 2021 | May 6, 2022 |
| Warehouse Mi Bodega 2022. | 1,597.19 | January through May 2022 | May 6, 2022 |
| Total | **69,248.63** | | |

c.  *Tax Liability*

In March 2022, the Temporary Receiver's counsel engaged an accountant to (i) bring MDP up-to-date on its Guatemalan tax reporting obligations; (ii) prepare MDP's financial statements for 2021; and (iii) pay for any taxes or fines MDP may owe to the Guatemalan tax authority to ensure MDP is in compliance with all Guatemalan tax laws. Keeping up-to-date with MDP's tax liabilities

is critical to the eventual liquidation of the asset and ensures the Temporary Receiver, as owner of the entity, is in compliance with Guatemalan law.

The accountant submitted a proposal of around USD 5,000.00 for settling all the fines with the Guatemalan tax authority and filing all the forms that are due; USD 550.00 for preparing and filing MDP's 2021 financial statements; and around USD 90.00 per month to keep the entity up-to-date on its tax obligations. These amounts have not yet been paid.

> d.   *Other Legal Issues.*

During the Reporting Period, the Temporary Receiver and her foreign and domestic counsel have been monitoring and attending to various legal issues in Guatemala.

First, MDP has been named in around twelve (12) civil litigations which are currently pending—most all of which are suits by past employees seeking wages. *See* [ECF No. 174].

Second, the Temporary Receiver and her team continue to monitor the progress of a criminal proceeding involving an incident that purportedly occurred in 2020 at the premises of El Pato GT, S.A. ("El Pato") in Chiquimula, Guatemala ("El Pato Criminal Case"), which is related in part to MDP. Since the February 10, 2022 hearing described in the prior status report, [ECF No. 174], the Temporary Receiver and her team are not aware of any other activity in the El Pato Criminal Case. The most recent hearing was postponed because the attorney representing one of the indicted parties reported to have contracted COVID-19. The Temporary Receiver's foreign counsel, Legalsa, has advised that the slow procession of this case is not uncommon because Guatemalan courts are overburdened due, in part, to the backlog the pandemic created.

Third, continuing from the last status report, [ECF No. 174], the Temporary Receiver's counsel has yet to hear from Ivan Morales, but the local communities have reported no further contact with or visits from Ivan Morales to MDP's premises. As background, in December of

2021, the Temporary Receiver and her team learned that an individual named Ivan Morales was in contact with the communities living around MDP and had entered the property with the goal of hindering the Receivership's efforts to protect the asset. The Temporary Receiver's team sent cease and desist letters, the most recent one on February 2, 2022. [ECF No. 174, p. 14]

Lastly, the Temporary Receiver and her team have also sent letters to other Guatemalan individuals who had a past relationship with MDP to let them know that the asset is now owned by the Temporary Receiver and covered by the Appointment Order.

      a.  *Sale Efforts.*

The Temporary Receiver executed a non-disclosure agreement with a party potentially interested in acquiring MDP. The non-disclosure agreement allows the parties to exchange confidential information about MDP and is part of the Temporary Receiver's efforts to sell MDP. The Temporary Receiver's team has had an initial meeting with this potentially interested party and expects an advance in the sale efforts in the next few weeks.

Additionally, the Temporary Receiver's counsel has engaged Leonard Curtis CI Limited ("LCCI") to provide assistance in marketing the opportunity to acquire the mining processing plant and ancillary facilities at the MDP property. LCCI is a leading insolvency, property solutions, and debt consulting firm. LCCI has promised to direct a marketing campaign to over a thousand potential acquirers for the sum of £10,000 plus VAT on a deferred payment schedule until approved by this Court.

2.  Desarrollos Inmobiliarios Izabal, S.A. ("DII")

      a.  *Sale of Development Project.*

As previously reported, [ECF No. 174], counsel for the Temporary Receiver took preliminary measures to facilitate the sale of DII's assets, namely, the piece of land and the

blueprint of a luxury apartment condominium that was to be built in Puerto Barrios, Guatemala. However, further efforts to sell the asset were suspended after January 2022 because the Temporary Receiver's team in charge of the Guatemala assets focused their attention on MDP and other urgent issues, such as those addressed above and in the Fourth Status Report, [ECF No. 174]. The Temporary Receiver's team has now resumed the efforts to sell this asset by contacting potentially interested parties in Guatemala, and it plans to continue the sale efforts in the upcoming weeks.

   *b.  Tax Issue.*

   The Receivership continues to owe Accountax, a Guatemalan accounting firm, around US $5,000.00 for its services. The Temporary Receiver is still assessing the alternatives it has available to keep DII's tax and accounting obligations up-to-date, including re-contracting with Accountax.

  3.  <u>El Pato</u>

   *a.  Asset Ownership.*

   El Pato continues to be considered an asset of the Receivership, although the Temporary Receiver does not yet hold formal title to it. During the Reporting Period, the Temporary Receiver has continued to request information and documents regarding claims of ownership over El Pato by two separate entities, a Canadian entity and a Guatemalan family, as addressed in detail below.

   As distinct from their communications with these entities, the Temporary Receiver and her team are in contact with two individuals that were allegedly transferred ownership of El Pato's stock in November 2019. The Temporary Receiver's counsel is in possession of a document transferring the stock. Importantly, these two individuals are (i) aware of, and willing to comply with, the Appointment Order, which forbids any individual in possession of a Receivership asset

from transferring or selling the asset, among other things; (ii) willing to transfer the El Pato stock in the Temporary Receiver's name; and (iii) available to assist the Temporary Receiver in complying with the Appointment Order and any other requirements under Guatemalan law. Because there are at least two other entities (described below) which claim to have ownership rights over El Pato, and multiple civil and criminal proceedings involving El Pato are currently ongoing in Guatemala, it is unclear whether the transfer of the stock in the Temporary Receiver's name would be clear from liabilities and whether the transfer would create an unnecessary burden on the Receivership. The Temporary Receiver's team's current objective for El Pato is to continue the investigation of ownership claims and make a determination as to whether transferring the stock of El Pato in the Temporary Receiver's name is in the Receivership's best interest.

With regards to the two ownership claims over El Pato's stock the Receivership has identified so far, the first ownership claim is from Goldex Resources Corporation ("Goldex"), a publicly traded Canadian firm. Goldex claims it founded El Pato in 2016 and it has been the rightful owner of the entity ever since. Goldex also alleges that any transfer of El Pato stock after 2016 is fraudulent because it occurred without Goldex's consent. As of today, Goldex has not made a clear showing to the Temporary Receiver and her team that they are in fact the rightful owners of El Pato. The Temporary Receiver and her counsel have made multiple requests to Goldex's counsel for information and documents, but critical information (such as confirmation that Goldex has possession of El Pato's *original* stock certificates) has not been provided. The Temporary Receiver's team will continue to investigate and assess Goldex's ownership claim.

The second claim over El Pato is from a Guatemalan entity which purports to have acquired the property in January 2022. The Temporary Receiver and her professionals have been in contact with at least one representative of this entity and have requested supporting documentation for this

ownership claim, including, a share purchase agreement, a copy of the stock certificates, and any other document proving ownership. The Guatemalan entity has refused to comply with these information requests in defiance of the Appointment Order.

4. Legalsa's Legal Assistance in Guatemala

The Temporary Receiver's team is currently working with Legalsa, who provides legal services in connection with the legal issues addressed above. As of April 26, 2022, the Receivership has incurred a total of US $18,544.00 in legal fees. Legalsa has not received payment yet.

## VIII.   RECEIVERSHIP'S ACCOUNTING

The Temporary Receiver is authorized by the Court to "[t]ake any action which . . . could have been taken by the officers, directors, employees, partners, representatives, and agents of South Aviation with respect to maintaining its ordinary operations" and "need not obtain Court approval prior to the disbursement of South Aviation's funds for expenses in the ordinary course of the administration and management of South Aviation, including the maintenance of its assets." [ECF No. 43] ¶¶ 7.E, 45. The Temporary Receiver must "use reasonable efforts to determine the . . . value of all property interests of South Aviation . . . ." [*Id.*] ¶ 8.A. The Appointment Order also instructs the Temporary Receiver to "take such action as necessary and appropriate for the preservation of property of South Aviation or to prevent the dissipation or concealment of property of South Aviation." [*Id.*] ¶ 8.G.

Below is a summary of expenses incurred in the course of administration and maintenance of South Aviation, as well as two asset sales used to fund these efforts. To date, the Temporary Receiver and her team have only used money attained through the sale of assets—detailed in the Temporary Receiver's Second Status Report, [ECF No. 111], Third Status Report, [ECF No. 142],

Fourth Status Report, [ECF No. 174], and in the preceding section—to operate the Receivership Estates.

The accounting below includes various catch-up payments from debt incurred during the last reporting period, *see* [ECF No. 174], which is described in more detail below (*see supra* Section VIII.2). The table below will also reflect a wire transfer that was initiated on March 30, 2022, and was subsequently rejected and credited by the bank, along with its wire fee, which was also refunded.

| Date | Source of Funds/Reason for Disbursement | Funds Received | Funds Disbursed | Funds Balance |
|---|---|---|---|---|
| 11-Mar-22 | Sale of MDP Rometa production line and concrete plant | 239,970.00 | | 239,970.00 |
| 14-Mar-22 | Wire Fee | | 30.00 | 239,940.00 |
| 14-Mar-22 | Reimbursement to J. Bremermann, MDP's weekly expenses, week of 12/6/21 | | 6,771.00 | 233,169.00 |
| 23-Mar-22 | Wire Fee | | 30.00 | 233,139.00 |
| 23-Mar-22 | Storage of large MDP assets (Rometa production line and concrete plant) between 10/2021 and 3/2022 | | 4,231.59 | 228,907.41 |
| 23-Mar-22 | Reimbursement to J. Bremermann, MDP's weekly expenses, week of 12/13/21 | | 6,771.00 | 222,136.41 |
| 30-Mar-22 | Wire Transfer Credit | 6,771.00 | | 228,907.41 |
| 30-Mar-22 | Wire Fee | | 30.00 | 228,877.41 |
| 30-Mar-22 | Reimbursement to J. Bremermann | | 6,771.00 | 222,106.41 |
| 31-Mar-22 | Wire Fee | | 30.00 | 222,076.41 |
| 31-Mar-22 | Reimbursement to J. Bremermann, MDP's weekly expenses, week of 12/20/21 | | 6,771.00 | 215,305.41 |
| 1-Apr-22 | Refund for Wire Fee | 30.00 | | 215,335.41 |
| 4-Apr-22 | Wire Fee | | 30.00 | 215,305.41 |
| 4-Apr-22 | Reimbursement to J. Bremermann, MDP's weekly expenses, week of 12/27/21 | | 6,771.00 | 208,534.41 |
| 8-Apr-22 | Sale of aircraft | 200,000.00 | | 408,534.41 |

| 12-Apr-22 | Reimbursement to J. Bremermann, MDP's weekly expenses, catch-up payment for weeks of 1/4/22 - 1/18/22 | | 20,313.00 | 388,221.41 |
|---|---|---|---|---|
| 9-May-22 | Reimbursement to J. Bremermann, MDP's weekly expenses, catch-up payment for weeks of 1/24/22 - 5/2/22 ($61,075.46); commission for sale of MDP Rometa assets ($6,000); total balance for Mi Bodega storage unit between November 2021 and May 2022 ($2,173.17) | | 69,248.63 | 318,972.78 |

1. <u>Cash on Hand</u>

The current cash on hand is **US $318,972.78.**

2. <u>Debt Incurred in Guatemala</u>

In the Fourth Status Report, the Temporary Receiver reported debt that had been incurred in Guatemala by the Receivership. [ECF No. 174]. The table above shows that (i) the balance for the Mi Bodega storage unit from November 2021 through May 2022; (ii) the storage of large MDP assets (Rometa production line and concrete plant); and (iii) outstanding MDP operating and maintenance expenses have been paid and thus those debts have been extinguished.

However, the Receivership still owes the accountants for MDP and DII.  For Accountax, the amount of US $5,040.00 remains unpaid. MDP owes the Guatemalan tax authority around US $2,215 (Q. 16,835.40), and MDP's accountant is owed approximately US $3,335.00, plus about US $90.00 per month since the engagement began.

## IX.   CONCURRENT PROCEEDINGS

In addition to the action which gave rise to the Receivership, other known actions premised on the same core set of facts, or some related or factual subset thereof, have been summarized below:

- *United States v. Mercer-Erwin, Machado et al.*, In the United States District Court for the Eastern District of Texas, Sherman Division, No. 4:20-CR-00212 (the "Texas Criminal Proceeding")

- *In re Wright Brothers Aircraft Title, Inc.*, In the Western District of Oklahoma; 5:21-BK-10994 (the "WBAT Bankruptcy")

- Various lawsuits pending in Florida state court by certain Chemtov investors against their respective LLCs and Chemtov Mortgage Group Corp. (the "Chemtov Investor Litigation"):

  o *Cinnamon Investments, LTD. et al. v. CMG777ESCROW4 LLC et al.*, No. 2021-007240-CA-01(Fla. 11th Cir. Ct. June 7, 2021), lead case which consolidates following lawsuits:
    - *Daniel Benoliel v. CMG 777Escrow3 LLC*, No. 2021-007305-CA-01
    - *Breton Investments, LLC. et al. v. CMG DHC8ESCROW7 LLC et al.*, No. 2021-007242-CA-01
    - *Breton Investments, LLC. et al. v. CMG 777ESCROW5 LLC et al.*, No. 2021-007241-CA-01

  o *Kolb, et al., v. Chemtov Mortgage Group Corp, et al.*, No. 2021-011992-CA-01 (Fla. 11th Cir. Ct., May 17, 2021)

- *In re: Assignment for Benefit of Creditors of Miami Perfume Junction, Inc. to: Leslie S. Osborne*, Case No. 2020-012763-CA-44, (Fla. 11th Cir Ct. June 23, 2021).

- Eleventh Circuit Court of Appeals No. 22-10304-A, appealing in *CCUR Aviation Finance LLC v. Machado*, Case No. 21-cv-60462-BB, from the District Court's December 27, 2021 Order, ECF No. 154, adopting Magistrate Judge's Report and Recommendation, [ECF No. 146], on the Temporary Receiver's First Fee Application for Reasonable Fees and Incurred Costs from April 16, 2021 through June 30, 2021, [ECF No. 89].

1. WBAT Bankruptcy Proceeding Update

On April 19, 2021, the Plaintiffs and Metrocity Intervenor filed an involuntary chapter 7 bankruptcy petition with respect to WBAT, commencing Case No. 21-10994 (the "WBAT Bankruptcy") before the United States Bankruptcy Court of the Western District of Oklahoma (the "Bankruptcy Court"). *See* [WBAT ECF No. 1].[1]  As alleged in the underlying Complaint, WBAT is the Escrow Agent detailed and part of the alleged Ponzi scheme. Through counsel, the

_____

[1] For ease of reference, docket entries on the WBAT Bankruptcy will be referred to herein as "WBAT ECF."

Temporary Receiver entered a Notice of Appearance in the WBAT Bankruptcy on July 28, 2021. [WBAT ECF No. 48]. The order for relief was entered on August 20, 2021, and Douglas Gould, panel trustee for the Western District of Oklahoma, was appointed as the chapter 7 trustee (the "WBAT Trustee"). *See* [WBAT ECF Nos. 73, 75].

Since the filing of the Temporary Receiver's Fourth Status Report, the WBAT Trustee has filed an Interim Status Report for the Period ending March 31, 2022, reflecting that the collection and analysis of estate assets is still ongoing, as is the investigation being undertaken on behalf of the trustee by estate professionals, including accountants and special counsel. *See* [WBAT ECF No. 167]. Additionally, on April 21, 2022, the WBAT Trustee filed a partial supplement to the Statement of Financial Affairs reflecting (i) known bank statement activity from WBAT's Bank of America and CrossFirst accounts identified from April 19, 2019 through September 16, 2021 and (ii) transaction data for WBAT accounts from January 1, 2016 through December 31, 2018, which supplements the previously filed transaction history for the period of January 1, 2019 through September 30, 2021. *See* [WBAT ECF No. 168].

Additionally, on May 10, 2022, the WBAT Trustee filed a Motion for Rule 2004 Examination of CrossFirst Bank and for Order Compelling Production of Documents (the "CrossFirst 2004 Motion"). *See* [WBAT ECF 171]. Through the CrossFirst 2004 Motion, the WBAT Trustee seeks to conduct an examination of a representative of CrossFirst, as well as to compel discovery of documents pertaining to accounts held at CrossFirst by Aircraft Guaranty Holdings, LLC ("AGH") for the two year pre-petition period. The WBAT Trustee stated that such discovery is necessary for administration of the WBAT Bankruptcy, as both WBAT and AGH are owned by Debbie Mercer-Erwin, and the WBAT Trustee's investigation to date has revealed significant transaction volume between WBAT and AGH in the pre-petition period.

Lastly, on May 10, 2022, the WBAT Trustee filed the Trustee's Motion to Require Turnover of Account Balance and Business Records (the "Turnover Motion"). *See* [WBAT ECF 169]. Through the Turnover Motion, the WBAT Trustee seeks turnover of all business records related to and all funds in accounts held by the Debtor at Raymond James Financial Services, at least one of which holds an approximate balance of US $300,000.

As set forth in the Fourth Status Report, the bar date for submission of non-governmental claims was February 10, 2022. The Temporary Receiver has filed a proof of claim for WBAT's liability to South Aviation, alleging damages in the approximate amount of US $400,000,000. As the WBAT Trustee's investigation into the assets and liabilities of WBAT, including the validity of filed proofs of claim, is ongoing, no claims have been deemed allowed, nor have any claims objections been filed.

The Temporary Receiver anticipates that further information regarding the assets and liabilities of the WBAT estate, and potential sources of recovery for creditors of WBAT, will be forthcoming and included in future status reports.

2. Texas Criminal Proceeding

Based on a review of the docket, the last entry in the Texas Criminal Proceeding was an order entered on March 24, 2022, directing Homeland Security to retain bulk evidence and refrain from destroying controlled substances relating to the Fifth Superseding Indictment. [TX Crim. ECF No. 279].[2] Prior to March 24, 2022, the trial date for defendants Debra Lynn Mercer-Erwin, Kayleigh Moffett, Carlos Rocha Villaurrutia was reset to July 18, 2022. *See* [TX Crim. ECF Nos. 270–72]. Additionally, defendant Carlos Rocha Villarrutia filed and subsequently withdrew an

---

[2] For ease of reference, docket entries on the Texas Criminal Proceeding will be referred to herein as "TX Crim. ECF."

opposed motion for bond and was ultimately remanded. *See* [TX Crim. ECF Nos. 273, 274–77]. The Temporary Receiver has no further information on Machado's whereabouts.

3. Eleventh Circuit Appeal

On January 26, 2021, Putative Creditors Rusty 115 Corp., Hopop Corp., Davidpop Corp., Rustypop Corp., Darusty Corp., Moncler Motors LLC, BOE 25014 LLC, BOE 30868 LLC, BOE 30874 LLC, BOE 30875 LLC, BOE 34432 LLC, Dash 4542 LLC, Dash 4554 LLC, Dash 4555 LLC, Chemtov Mortgage Group Corp., CMG 777 Excrow3 LLC, CMG 777 Escrow4 LLC, CMG 777 Escrow5 LLC, CMG DHC8 Escrow 7 LLC, and Bryn and Associates, P.A. (the "Putative Creditors") appealed to the United States Court of Appeals for the Eleventh Circuit from the district court's December 27, 2021 Order Adopting the Magistrate Judge's Report and Recommendation, [ECF Nos. 154, 146]. *See* [ECF No. 163]. Since that time, counsel for the Temporary Receiver has filed an appearance and filed a Certificate of Interested Persons and a Corporate Disclosure Statement.

On February 28, 2022, the Eleventh Circuit issued two jurisdictional questions to the appellate parties, asking (1) if the district court's December 27, 2021 order granting, in part, the Temporary Receiver's application for reasonable fees and reimbursement of incurred costs, [ECF No. 154] was final or otherwise appealable; and (2) whether South Aviation Inc.'s citizenship had been sufficiently alleged in the absence of allegations of the location of its primary place of business. *See* Letter from David J. Smith, Clerk of Court, No. 22-10304-AA (filed Feb. 28, 2022). On March 14, 2022, the Temporary Receiver, as Appellee, filed a response to the jurisdictional questions. *See* Appellee's Response to Jurisdictional Questions, No. 22-10304-AA (filed Mar. 14, 2022).

Additionally, in light of the appellate court's forthcoming ruling on its previously posed jurisdictional questions, among other reasons, the deadline for the Appellant's brief has been extended until May 12, 2022.

4. Florida State Court Actions

a. *Chemtov Investor Litigation*

The Temporary Receiver continues to monitor several pending cases involving CMG 777Escrow3 LLC, CMG 777Escrow4 LLC, CMG 777Escrow5 LLC, CMG DHC8Escrow7 LLC Chemtov Mortgage Group Corp (the "Chemtov Entities")—who have appeared in this action as objectors to the Temporary Receiver's various fee applications and have appealed the Order granting the Temporary Receiver's first fee application. [ECF No. 163]. Because these entities, with the exception of the Chemtov Mortgage Group Corp., have submitted a Claims Package in the Claims Process, this litigation speaks directly to the merits of their claims.

b. *Lawsuit Including JF Aircorp*

The Temporary Receiver continues to stay apprised of the docket for the default judgment action, styled *In re: Assignment for Benefit of Creditors of Miami Perfume Junction, Inc., To: Leslie S. Osborne*, Case No. 2020-012763-CA-44, in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade, Florida (the "Default Action"). At this time, the Temporary Receiver has no substantive updates regarding the Default Action.

X.   **PRIORITIES**

1. Sale /Liquidation of Foreign Assets

The Temporary Receiver and her team plan to engage in efforts to sell the processing plant owned by MDP and the plots of land and blueprint owned by DII as soon as the Receivership has the funding necessary to support these efforts.

2. <u>Claims Process and Distribution Plan</u>

As set forth above, the submission deadline for Proofs of Claim was January 27, 2022. The Temporary Receiver's analysis of submitted claims is ongoing, as it is closely intertwined with the Temporary Receiver's identification of the "net winners" of the Receivership Estates—against whom the Receivership Estates may hold claims. As part of this analysis, and as a result of certain deficient proofs of claim or claims that otherwise require additional documentation to fully substantiate the amount of liability asserted, the Temporary Receiver and her counsel are working to identify the additional required information in order to make a comprehensive determination as to the validity of the asserted claims. Additionally, upon (i) the completion of the investigation into claims potentially held by the Receivership Estates and (ii) there being sufficient liquidity in the Receivership Estates to provide for a meaningful pro rata distribution on account of valid claims, the Temporary Receiver will file and seek approval of a distribution plan.

3. <u>Litigation Funding</u>

To date, the Temporary Receiver has received two term sheets for potential third party funding arrangements. The Temporary Receiver and her counsel have not negotiated any terms or shared the terms with any claimants. Due to the previously-pending expiration of her appointment, the Temporary Receiver delayed further discussions on additional funding options. Discussions have resumed since the Court's Order Granting Second Extension of Receivership, [ECF No. 184].

4. <u>Litigation Strategy</u>

As described above, the Temporary Receiver has been in the process of ongoing investigative efforts to understand the full scope (to the extent that is possible) of the underlying scheme in order to trace and recover assets for creditors. Again, given the previously-pending expiration of her appointment, and in a good faith effort to steward resources, the Temporary Receiver paused certain efforts during the Relevant Period, which efforts will now be resumed.

Assets, of course, include items such as aircraft or other real or personal property owned by the Receivership Estates. Assets also include legal claims the Temporary Receiver may advance in order to recover value for the Receivership. These claims may take the form of (i) leveraging existing powers to expand the Receivership over other entities; and (ii) pursuing legal and equitable causes of action against third parties including, but not limited to, net winners, fraudulent transferees, contract counterparties, nominal defendants who were unjustly enriched, as well as insurers and financial institutions who enabled the scheme to exist and proceed.

In analyzing her options for litigating claims on behalf of the Receivership Estates, the Temporary Receiver is carefully considering not just the relevant legal and evidentiary requirements, but also the investment of her and her team's time, staffing, and financial resources, and the likelihood and actual value of success for the creditors of the Receivership.

The Temporary Receiver underscores the importance of conducting and completing a thorough investigation in order to make an informed determination—and recommendations to the Court—about which entities to bring into the Receivership and which third parties to pursue in litigation and under what theories. The Temporary Receiver is considering a variety of legal theories for potential third party claims, including fraudulent transfer, fraud, conversion, unjust enrichment, embezzlement, breach of contract, breach of fiduciary duty, and negligence. Necessarily, ongoing efforts to obtain key information through interviews, depositions, subpoenas and voluntary production are a critical condition precedent to any well-pleaded claim the Temporary Receiver may bring, though the work required to undertake and complete those efforts is informed by available resources.

Dated: May 11, 2022                    Respectfully submitted,


By:       s/*Sydney B. Alexander*
          Warren Gluck, *Pro Hac Vice*
          New York Bar No. 4701421
          Warren.Gluck@hklaw.com
          Holland & Knight LLP
          31 West 52nd Street 12th Floor
          New York, NY  10019
          Telephone: (212) 513-3200
          Facsimile: (212) 385-9010

          Sydney B. Alexander
          Florida Bar No. 1019569
          Sydney.Alexander@hklaw.com
          Holland & Knight LLP
          701 Brickell Avenue, Suite 3300
          Miami, FL 33131
          Telephone: (305) 374-8500
          Facsimile: (305) 789-7799

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of May, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served on this day on counsel identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*Sydney B. Alexander*
Sydney B. Alexander

**SERVICE LIST**

| | |
|---|---|
| Jonathan Bart Morton<br>jonathan.morton@klgates.com<br>Stephen Allan McGuinness<br>stephen.mcguinness@klgates.com<br>K&L Gates LLP<br>Southeast Financial Center<br>200 S Biscayne Boulevard, 39th Floor<br>Miami, FL 33131-2399<br>Telephone: (305) 539-3357<br>Facsimile: (305) 358-7095<br>*Counsel for CCUR Holdings, Inc.*<br>*and CCUR Aviation Finance, LLC* | Christopher A. Brown<br>chris.brown@klgates.com<br>David Weitman<br>david.weitman@klgates.com<br>K&L Gates, LLP<br>1717 Main Street, Suite 2800<br>Dallas, TX 75201<br>Telephone: (214) 939-5500<br>*Counsel for CCUR Holdings, Inc.*<br>*and CCUR Aviation Finance, LLC* |
| Paul Joseph Battista<br>pbattista@gjb-law.com<br>Genovese Joblove & Battista, P.A.<br>100 S.E. 2nd Street, 44th Flr.<br>Miami, FL 33131<br>Telephone: (305) 349-2329<br>Facsimile: (305) 428-8832<br>*Counsel for Metrocity Holdings, LLC* | Peter Harlan Levitt<br>plevitt@shutts-law.com<br>Shutts & Bowen<br>201 S Biscayne Boulevard<br>Suite 1500 Miami Center<br>Miami, FL 33131<br>Telephone: (305) 358-6300<br>Facsimile: (305) 415-9847<br>*Counsel for WBIP Aviation One, LLC*<br>*and WBIP Aviation Two, LLC* |
| Gabriel Hertzberg<br>ghertzberg@curtis.com<br>Curtis, Mallet-Prevost, Colt & Mosle, LLP<br>101 Park Avenue<br>New York, NY 10178<br>Telephone: (212) 696-8856<br>Facsimile: (917) 368-7356<br>*Counsel for WBIP Aviation One, LLC*<br>*and WBIP Aviation Two, LLC* | South Aviation, Inc.<br>1470 Lee Wagoner Blvd, Suite 100<br>Fort Lauderdale, FL 33315<br>*Pro Se* |
|  | Federico A. Machado<br>1470 Lee Wagoner Blvd., Suite 100<br>Fort Lauderdale, FL 33315<br>*Pro Se* |
| Peter W. Homer<br>phomer@homerbonner.com<br>1200 Four Seasons Tower<br>1441 Brickell Avenue<br>Miami, Florida 33131<br>Phone: (305) 350-5139<br>*Counsel for Objecting Parties to the Fee*<br>*Application* |  |