UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60462-BLOOM/Valle

CCUR AVIATION FINANCE, LLC and
CCUR HOLDINGS, INC.,

    Plaintiffs,

v.

SOUTH AVIATION, INC. and
FEDERICO A. MACHADO,

    Defendants.
_____/

**OMNIBUS ORDER ON SECOND, THIRD, AND FOURTH APPLICATIONS
FOR REASONABLE FEES AND REIMBURSEMENT OF COSTS**

**THIS CAUSE** is before the Court upon the Temporary Receiver Barbara Martinez's ("Temporary Receiver") Second Interim Application for Reasonable Fees and Reimbursement of Costs for July 1, 2021 – September 30, 2021, ECF No. [131] ("Second Application"), Third Interim Application for Reasonable Fees and Reimbursement of Costs for October 1, 2021 – December 31, 2021, ECF No. [157] ("Third Application"), and Fourth Interim Application for Reasonable Fees and Reimbursement of Costs for January 1, 2022 – March 31, 2022, ECF No. [181] ("Fourth Application"). Creditors Rusty 115 Corp., Hopop Corp., Davidpop Corp., Rustypop Corp., Darusty Corp., Moncler Motors LLC, BOE 25014 LLC, BOE 30868 LLC, BOE 30874 LLC, BOE 30875 LLC, BOE 34432 LLC, Dash 4542 LLC, Dash 4554 LLC, Dash 4555 LLC, Chemtov Mortgage Group Corp., CMG 777 Excrow3 LLC, CMG 777 Escrow4 LLC, CMG 777 Escrow5 LLC, CMG DHC8 Escrow 7 LLC, and Bryn and Associates, P.A. (collectively, "Creditors") filed a Response in Opposition to the Second Application, ECF No. [147] ("Second Response"), to which the Temporary Receiver filed a Reply, ECF No. [151] ("Second Reply").

Case No. 21-cv-60462-BLOOM/Valle

The Creditors also filed a Response in Opposition to the Third Application, ECF No. [170] ("Third Response"), to which the Temporary Receiver filed a Reply, ECF No. [175] ("Third Reply").[1] The Court has carefully considered the Applications, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Second Application is granted in part and denied in part consistent with this Order, the Third Application is denied without prejudice, and the Fourth Application is denied without prejudice.

## I.  BACKGROUND

On April 16, 2021, the Court appointed the Temporary Receiver to confirm Defendant South Aviation's ("South Aviation") assets; determine the amount owed to South Aviation's creditors; freeze assets to ensure South Aviation's creditors are repaid; marshal, safeguard, and liquidate assets; ensure that preferential payments to creditors and insiders do not occur at the expense of other creditors; ensure that South Aviation's creditors are repaid in a fair and equitable manner; and file and prosecute ancillary actions to recover monies or assets for the benefit of South Aviation's creditors. *See* ECF No. [43] at 2 ("Appointment Order"). According to the Appointment Order, the Temporary Receiver has the power to "[c]hoose, engage, and employ attorneys, accountants and other appropriate agents or professionals, as the Temporary Receiver deems

---

[1] The Creditors have not filed a motion to intervene in this case but claim to be victims of the underlying fraudulent scheme. *See* ECF No. [147] at 2. The Temporary Receiver represents that, as of the Second Reply, the Creditors had not filed claims in the Court-approved claims process. *See* ECF No. [151] at 2 n.3. It appears that some, but not all, of the Creditors have submitted claims since the filing of the Third Reply. *See* ECF No. [175] at 10. For the sake of judicial economy, the Court considers the Creditors' representation that the Creditors are all victims of the underlying fraudulent scheme and the Temporary Receiver's representation that some of the Creditors submitted claims to confer standing for the Creditors to assert their Responses to the Applications. *See* Fed. R. Civ. P. 24. However, the Court notes that the Creditors will be required to file claims in accordance with the Court-approved claims process to seek recovery in this case.

advisable or necessary in the performance of her duties and responsibilities." *Id.* ¶ 8.P. Additionally, the Appointment Order states:

> The Temporary Receiver and all professionals she retain[s] are entitled to compensation deemed to be reasonable and appropriate for their work. The Temporary Receiver is authorized to file motions to employ professionals, such as attorneys and/or accountants, whose rates will be disclosed in same.

*Id.* ¶ 46.

On July 16, 2021, the Temporary Receiver filed her First Application for Reasonable Fees and Reimbursement of Incurred Costs for April 16, 2021 – June 30, 2021. *See* ECF No. [89] ("First Application"). The Creditors and Intervenor Metrocity Holdings, LLC filed a Response in Opposition, ECF No. [92] ("First Response"), to which the Temporary Receiver filed a Reply, ECF No. [108-1] ("First Reply"). On December 3, 2021, Magistrate Judge Valle issued her Report and Recommendation ("R&R"), recommending that the First Application be granted in part. *See* ECF No. [146]. On December 17, 2021, the Creditors, but not Intervenor Metrocity Holdings, LLC, filed their Objection, arguing that Magistrate Judge Valle erred. *See* ECF No. [153] ("Objection"). Upon review, the Court overruled the Creditors' Objection, adopted the R&R, and granted in part the First Application. *See* ECF No. [154]. The Temporary Receiver subsequently filed the Second Application and Third Application. *See* ECF Nos. [131], [157].

On January 26, 2022, while the Applications were pending, the Creditors appealed the Court's Order adopting the R&R. *See* ECF No. [163]. As such, the Court stayed the Applications pending the Eleventh Circuit's ruling on the Court's previous Order. *See* ECF No. [180]. While the appeal was pending, the Temporary Receiver filed her Fourth Application, *see* ECF No. [181], which the Court similarly stayed, *see* ECF No. [182]. On May 20, 2022, the Eleventh Circuit dismissed the Creditors' appeal for lack of jurisdiction. *See* ECF No. [187]. On May 23, 2022, the

Court lifted the stays and referred the Applications to Magistrate Judge Valle for a second Report and Recommendation. *See* ECF No. [188].[2]

In the Second Application, the Temporary Receiver seeks an Order that authorizes (a) compensation to the Temporary Receiver for $41,175.99; (b) discounted interim compensation to the Temporary Receiver's counsel, Holland & Knight ("H&K"), for $320,602.00; (c) payment to the investigators, HD Investigative Group, for $4,161.00; (d) compensation to Legalsa, local counsel in Guatemala, for $15,862.00; (e) payment to R&H Restructuring for forensic asset tracing for $24,543.10; (f) payment to Connor and Winters, LLP for legal services in the concurrent bankruptcy proceeding pending in Oklahoma for $3,151.90; and (g) expenses, *nunc pro tunc*, distributed to Broadlands of $22,984.00 for the site visit to conduct the processing plant appraisal. *See* ECF No. [131] at 17.

The Creditors respond that the Court should deny the Second Application because the Temporary Receiver did not comply with the Appointment Order by failing to seek the Court's approval before employing professionals. *See* ECF No. [147] at 2-7. Alternatively, the Creditors argue that determination of the Second Application is premature at this stage because there are no results obtained as of the date of the Second Application. *See id.* at 7-9. Alternatively, the Creditors also argue that the requested hourly rates, time billed, and expenses incurred are unreasonable, and the Temporary Receiver, her counsel, and other professionals did not exercise billing judgment. *See id.* at 9-21.[3]

In the Third Application, the Temporary Receiver seeks an Order that authorizes (a) compensation to the Temporary Receiver for $49,656.00; (b) discounted interim compensation to

---

[2] The Court now withdraws the referral to Magistrate Judge Valle and considers the merits of the Applications.
[3] The Creditors' Second Response is mostly a duplication of the Creditors' First Response, which the Court already found unpersuasive. *See* ECF Nos. [92], [154].

4

the Temporary Receiver's counsel, H&K, for $430,579.25; (c) compensation to Legalsa, local counsel in Guatemala, for $2,556.00; (d) payment to R&H Restructuring for forensic asset tracing for $96,354.60; and (e) payment to Connor and Winters, LLP for legal services in the concurrent bankruptcy proceeding pending in Oklahoma for $360.00. *See* ECF No. [157] at 20.

Regarding the Third Application, the Creditors request that the Court postpone determination and award of fees until after the Temporary Receiver has filed her interim status report and the Creditors have had an opportunity to review, question, and submit any objections based on the interim status report. *See* ECF No. [170]. The Temporary Receiver subsequently filed her Fourth Status Report, ECF No. [174]. To date, the Creditors have not filed an amended response to the Third Application, nor have they sought leave to file an amended response in light of the Fourth Status Report.

In the Fourth Application, the Temporary Receiver seeks an Order that authorizes (a) compensation to the Temporary Receiver for $69,432.50; (b) discounted interim compensation to the Temporary Receiver's counsel, H&K, for $527,248.35; and (c) payment to Connor and Winters, LLP for legal services in the concurrent bankruptcy proceeding for $1,320.00. *See* ECF No. [181] at 26.

## II.    LEGAL STANDARD

A receiver is an officer of the court and is subject to its direction and orders. *See SEC v. Onix Cap. LLC*, No. 16-CV-24678, 2020 WL 9549527, at *2 (S.D. Fla. Jan. 24, 2020), *report and recommendation adopted*, 2020 WL 9549523 (S.D. Fla. May 13, 2020). A receiver is generally permitted to obtain counsel for herself, and other employees to aid in the management of the receivership estate. *See id*. (citations omitted). A receiver also owes a duty to exercise reasonable care to protect and preserve the assets of the receivership estate as required by a receivership order.

*See id.* In determining a reasonable fee for a receiver, her attorneys, and accountants, a court must consider the nature and complexity of the legal issues presented and the skills necessary to resolve them. *See SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and results are always relevant." (citation and internal quotation marks omitted)).

The courts use the lodestar method to determine the reasonableness of the fees charged by the receiver and the professionals she hires. *See, e.g.*, *Onix,* 2020 WL 9549527, at *2; *FTC v. JPM Accelerated Servs., Inc.*, No. 09-CV-2021-OrL-28KRS, 2010 WL 11626760, at *2 (M.D. Fla. Jul. 12, 2010) ("Courts have held that a lodestar-style analysis is appropriate in evaluating the reasonableness of fees charged by accountants and other non-attorney professionals."). The lodestar approach considers the reasonableness of the hourly rates claimed by the professionals and the reasonableness of the hours expended. *Onix*, 2020 WL 9549527, at *2; *JPM*, 2010 WL 11626760, at *2. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The relevant legal community is "the place where the case is filed." *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotations and citation omitted). While the particular expertise, experience, and prestige of the attorneys may be considered, the fees are constrained by the prevailing market rates. The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Norman*, 836 F.2d at 1299.

## III. DISCUSSION

### a. Second Application

As stated, the Temporary Receiver seeks an Order that authorizes (a) compensation to the Temporary Receiver for $41,175.99; (b) discounted interim compensation to the Temporary Receiver's counsel, H&K, for $320,602.00; (c) payment to the investigators, HD Investigative Group, for $4,161.00; (d) compensation to Legalsa, local counsel in Guatemala, for $15,862.00; (e) payment to R&H Restructuring for forensic asset tracing for $24,543.10; (f) payment to Connor and Winters, LLP for legal services in the concurrent bankruptcy proceeding pending in Oklahoma for $3,151.90; and (g) expenses, *nunc pro tunc*, distributed to Broadlands, $22,984.00 for the site visit in order to conduct the processing plant appraisal. *See* ECF No. [131] at 17. The Creditors respond that Court should deny the Second Application because the Temporary Receiver did not comply with the Appointment Order by failing to seek the Court's approval before employing professionals. *See* ECF No. [147] at 2-7. Alternatively, the Creditors argue that determination of the Second Application is premature at this stage because there are no realized results obtained as of the date of the Second Application. *See id.* at 7-9. The Creditors also argue in the alternative that the requested hourly rates, time billed, and expenses incurred are unreasonable, and that the Temporary Receiver, her counsel, and other professionals did not exercise billing judgment. *See id.* at 9-21. The Court addresses the Creditors' arguments in turn.

#### i. Compliance with the Appointment Order

First, the Creditors argue that the Temporary Receiver was required to file a motion seeking Court approval prior to hiring professionals. *See* ECF No. [147] at 2-7. The Creditors contend that the Temporary Receiver created a conflict of interest because the Temporary Receiver hired her own firm H&K as her counsel before seeking the Court's approval and agreed to pay the full rate

charged by H&K partners, associates, and staff. *See id.* at 6-7. The Temporary Receiver replies that she complied with the Court's Order and no conflict of interest exists by hiring her own firm as her counsel. *See* ECF No. [151] at 7-8. The Temporary Receiver cites paragraph 46 of the Appointment Order, which states that the "Temporary Receiver is authorized to file motions to employ professionals, such as attorneys and/or accountants, whose rates will be disclosed in same." *Id.* at 9 (quoting ECF No. [43] ¶ 46).

The Court agrees with the Temporary Receiver. As the Court stated in its previous Order adopting the R&R and granting in part the First Application, the Appointment Order allows the Temporary Receiver to "[c]hoose, engage, and employ attorneys, accountants and other appropriate agents or professionals, as the Temporary Receiver deems advisable or necessary in the performance of her duties and responsibilities." *See* ECF No. [154] at 6 (quoting ECF No. [43] ¶ 8.P). Further, the Creditors' reliance on paragraph 46 of the Appointment Order is unpersuasive because paragraph 46 states that the Temporary Receiver is "authorized" to file motions to employ professionals. ECF No. [43] ¶ 46. By its plain terms, the Appointment Order does not require such motions to be filed *prior* to hiring professionals. *See* ECF No. [43] ¶¶ 8.P, 46.[4] Additionally, the Court has already determined that the Temporary Receiver did not create a conflict of interest by engaging H&K attorneys to serve as her counsel because that practice is common in this District. *See* ECF No. [154] at 7 (citing *SEC v. Lauer*, No. 03-80612-CIV, 2012 WL 12892875, at *1 (S.D. Fla. July 17, 2012), *report and recommendation adopted*, No. 03-80612-CIV, 2012 WL 12892411

---

[4] To the extent that the Temporary Receiver needs to comply with paragraph 46 and seek Court approval to employ professionals, the Court considers the First Application and the instant Second Application to be sufficient.

8

(S.D. Fla. Aug. 24, 2012); *FTC v. Marcus*, No. 17-CV-60907 (S.D. Fla. Jan. 29, 2018) (ECF Nos. [135], [211])).[5] Therefore, the Creditors' first argument is unpersuasive.

### ii. Appreciable Assets

Second, the Creditors argue that the Second Application is premature because the Temporary Receiver has not realized any liquid assets. *See* ECF No. [147] at 7-9. The Creditors stress that "results are always relevant" and that the Temporary Receiver is not yet entitled to any compensation. *Id.* at 8 (citing *Elliott*, 953 F.2d at 1577). The Temporary Receiver replies that she is not required wait until the assets are marshaled and liquidated to seek compensation. *See* ECF No. [151] at 10-11. Moreover, the Temporary Receiver points out that she has achieved concrete results.

The Court agrees with the Temporary Receiver. As the Court previously noted, the Appointment Order states that "[t]he compensation of the Temporary Receiver and her professionals shall be entitled to priority as administrative expenses." ECF No. [154] at 7 (quoting ECF No. [43] ¶ 48). The Eleventh Circuit has also held that "there is an implied understanding that the court which appointed [the Temporary Receiver] and whose officer [she] is will protect [her] right to be paid for [her] services, to be reimbursed for [her] proper costs and expenses." *Elliott*, 953 F.2d at 1576 (citation and internal quotation marks omitted). In this case, the Temporary Receiver sufficiently describes concrete results including: the expansion of the Receivership to encompass JF Aircorp, arrangement of the public sale of an aircraft for the benefit of the Receivership Estates, the identification and acquisition of ownership and control of several entities

---

[5] To the extent that the Creditors argue that the Temporary Receiver created a conflict of interest when she agreed to the high hourly rates charged by H&K attorneys and staff, *see* ECF No. [147] at 6-7, the Court notes that the Temporary Receiver has agreed to cap the hourly rates for most of the timekeepers at H&K. *See* ECF [151] at 15. The Court determines that the capped fees are reasonable for the purposes of the Second Application as noted below. Therefore, there is no conflict of interest.

in Guatemala—funded through South Aviation, the liquidation of multiple assets and equipment belonging to the Receivership Estates in a foreign jurisdiction to fund the Temporary Receiver's efforts to preserve other assets of the Receivership Estates, and the coordination of a complicated site visit to a mine in Guatemala in order to determine the valuation and potential source of liquidity for the Receivership Estate. *See* ECF Nos. [151] at 11-12; *see also* ECF Nos. [52], [111], [142].[6] Therefore, considering the likelihood of liquid assets in the future and the priority with which this Court should treat the Temporary Receiver's compensation, the relative uncertainty of the source of funds at this juncture does not obviate the Temporary Receiver's right to compensation for her efforts.

### iii. Reasonableness of the Fees and Expenses

#### 1. Reasonableness Factors

The Creditors argue that the requested fees and expenses are unreasonable given the factors set forth in *FTC v. Sicard*, No. 17-cv-1257-Orl-37TBS, 2018 WL 3244011, at *3 (M.D. Fla. Jun. 18, 2018), *report and recommendation adopted*, 2018 WL 3241272 (M.D. Fla. Jul. 3, 2018). *See* ECF No. [147] at 10-11. The Second Response sets forth the relevant reasonableness factors: "(1) the results achieved by the Receiver; (2) the ability, reputation and professional qualities of the Receiver necessary for the job; (3) the size of the Estate and its ability to afford the expenses and fees; and (4) the time required to conclude the receivership." *Id.* at 10-11 (citing *Sicard*, 2018 WL

---

[6] The Creditors mention in a footnote that the Temporary Receiver's efforts in a bankruptcy proceeding in Oklahoma ("WBAT Bankruptcy") has not realized any benefit to the Receivership. *See* ECF No. [147] at 6 n.2; *see also id.* at 9, 19. The Temporary Receiver replies that "the time expended by her counsel with respect to the WBAT Bankruptcy was necessary and material to her mandate to diligently investigate the Receivership Estates' assets and liabilities, particularly given the significant overlap between the creditor constituencies of the Receivership Estates and the WBAT Bankruptcy, and the interrelated facts that precipitated both the Temporary Receiver's appointment and the commencement of the WBAT Bankruptcy as an involuntary chapter 7 proceeding." ECF No. [151] at 12 n.9. The Court is persuaded that the Temporary Receiver's efforts in the WBAT Bankruptcy was reasonable and necessary.

3244011, at *3). The Temporary Receiver replies that the Court should follow binding precedent set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and that under the factors set forth in *Johnson*, the requested fees and expenses are reasonable. *See* ECF No. [151] at 14-15.[7] The Temporary Receiver also argues that she implemented an hourly cap on fees for most of the timekeepers at H&K. *See id.* at 15; *see also* ECF No. [131-2].

Consistent with the Court's previous Order, the Court is guided by the lodestar approach and the *Johnson* factors, which *include* the *Sicard* factors listed above. *See* ECF Nos. [154] at 8-10, [146] at 6 (citing *Johnson*, 488 F.2d at 717-19). According to the R&R, those factors include: "(i) the time and labor required; (ii) the novelty and difficulty of the questions presented; (iii) the skill required to perform the legal service properly; (iv) the preclusion of other employment; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases." ECF No. [146] at 6 n.4 (citing *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562 n.7 (1986)). The Court's analysis of the factors remains unchanged. That is, the Court determines that the results achieved in the Second Application, the difficulties in coordinating the recovery of foreign and domestic assets, the complex nature of the case, the time spent by the Temporary Receiver, her counsel, and other professionals, and consideration of the other *Johnson* factors render the fees requested in the Second Application to be reasonable. *See* ECF No. [154] at 8-10; *see also* ECF No. [146] at 5-8.

---

[7] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

### 2. Comparison to Common Hourly Rates

The Second Response contends that the hourly rates and hours billed by the Temporary Receiver and her professionals are unreasonable considering the hourly rates in similar cases. *See* ECF No. [147] at 11-17. More specifically, the Creditors argue that the hourly rates requested in this case exceed the hourly rates commonly billed for federal receiverships in Florida. *See id.* at 13-14. The Creditors specifically highlight the rate paid to a receiver in a recent case in this District. *See id.* at 14-15 (citing ECF Nos. [147-1], [147-2]). The Temporary Receiver replies that her hourly rates and those of her professionals are similar to the hourly rates awarded in receivership proceedings. *See* ECF No. [151] at 20, 18 n.12.

The Court agrees with the Temporary Receiver's argument on this matter for the purposes of the Second Application only. The Court reiterates that the hourly rates for federal receiverships in Florida are not dispositive given the varying complexity of receiverships. *See* ECF No. [154] at 10. While a comparison to the hourly rates billed for receiverships may be a starting point, it is not dispositive since such a comparison does not consider the material differences in the difficulties posed by each receivership. *See SEC v. W. L. Moody & Co.*, 374 F.Supp. 465, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)[8] ("In general, a reasonable fee is based on all circumstances surrounding the receivership. Accordingly, although authorities provide convenient guidelines, the unique fact situation of each case renders direct reliance on precedent impossible."). The Receivership in this case involves a business that has ceased operating for months, foreign and domestic assets, and allegations of fraud. *See* ECF No. [151] at 15-17. As such, a higher hourly rate commensurate with the difficult circumstances is warranted, at least for the purposes of the Second Application.

---

[8] As noted previously, pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

### 3. Billing Judgment

The Creditors also argue that the Temporary Receiver, her counsel, and other professionals did not exercise billing judgment. *See* ECF No. [147] at 17-21. According to the Creditors, the Temporary Receiver and her counsel needlessly used timekeepers in different states, performed excessive, duplicative, and unnecessary work, and engaged in block billing. *See id.* at 19. The Temporary Receiver replies that the Second Application clearly outlines the amount and purposes of all time devoted to this matter, as evidenced by the time records and summaries, inclusive of dates, appended to the Second Application. *See* ECF No. [151] at 21-22. Further, the Temporary Receiver argues that the timesheets do not contain any block billing, and the timesheets provide a thorough description of the activities performed that clarifies, rather than obscures, the record. *See id.* Lastly, the Temporary Receiver submits that the timesheets attached to the Second Application reveal that no clerical tasks were undertaken by attorneys. *See id.*

The Court mostly agrees with the Temporary Receiver. A review of the timesheets and receipts indicates that the Temporary Receiver, her counsel, and most of the other professionals hired by the Temporary Receiver did not perform excessive, duplicative, and unnecessary work. Further, they included sufficient descriptions to reasonably clarify the work they performed. *See generally* ECF Nos. [131-2], [131-3], [131-4],[9] [131-5], [131-7], [131-8]. However, the Court notes that R&H Restructuring did engage in block billing, and therefore, the Court is unable to conduct an hour-by-hour review of the fee documentation. *See* ECF No. [131-6]. As such, the Court determines that a twenty-five (25) percent across-the-board reduction of R&H Restructuring's fees is appropriate and consistent with Eleventh Circuit precedent. *See Dial HD,*

---

[9] The timesheet for Legalsa was in Spanish. In the interest of judicial economy, the Court considered the timesheet. However, the Court will require an English translation for any foreign language document in all future filings.

*Inc. v. ClearOne Commc'ns*, 536 F. App'x 927, 931 (11th Cir. 2013) (affirming a "25% across-the-board reduction to the fees charged by one law firm based on its conclusion that the firm used block billing, making it difficult to ascertain how much time was spent on each task"). In sum, the Court determines that the Temporary Receiver, her counsel, and most of the other professionals exercised billing judgment, but the Court applies a twenty-five (25) percent across-the-board reduction for R&H Restructuring's fees only.

### 4. Reasonableness of the Expenses

Lastly, the Creditors argue that the request for reimbursement of expenses is deficient because the Temporary Receiver failed to provide why the expenses were necessarily incurred and why they were reasonable. *See* ECF No. [147] at 21. The Temporary Receiver replies that she submitted records of reimbursable costs with specific receipts and invoices. *See* ECF No. [151] at 25-26.

The Court agrees with the Temporary Receiver. Upon review of the exhibits attached to the Second Application, the Court determines that the requested reimbursable costs to be reasonable. *See generally* ECF Nos. [131-2], [131-3], [131-5], [131-7], [131-8]. As before, the Court considers the receipts and invoices to be sufficient in demonstrating the necessity and reasonableness of the expenses.

### iv. Request for Hearing

In the Second Response, the Creditors also request a hearing. *See* ECF No. [147] at 21. Given the Court's analysis above, the Court does not find a hearing to be necessary to address the issues presented. As such, the Court denies the Creditors' request for a hearing.

### b. Third Application

As noted above, on January 24, 2022, the Temporary Receiver filed the Third Application seeking an Order authorizing (a) compensation to the Temporary Receiver for $49,656.00; (b) discounted interim compensation to the Temporary Receiver's counsel, H&K, for $430,579.25; (c) compensation to Legalsa, local counsel in Guatemala, for $2,556.00; (d) payment to R&H Restructuring for forensic asset tracing for $96,354.60; and (e) payment to Connor and Winters, LLP for legal services in the concurrent bankruptcy proceeding pending in Oklahoma for $360.00. *See* ECF No. [157] at 20. On February 7, 2022, the Creditors filed their Third Response requesting that the Court postpone determination and award of fees until after the Temporary Receiver has filed her interim status report and the Creditors have had an opportunity to review, question, and submit any objections based on the interim status report. *See* ECF No. [170]. On February 10, 2022, the Temporary Receiver filed her Fourth Status Report, ECF No. [174]. To date, the Creditors have not filed an amended response to the Third Application, nor have they sought leave to file an amended response in light of the Fourth Status Report, despite having the opportunity to do so before the Court stayed the Third Application. *See* ECF No. [180]. Given the Creditors' delay in seeking leave to file an amended response, the Court reviews the merits of the Third Application without the benefit of an amended response.

In its previous Order adopting the R&R, the Court stated that it is customary for a receiver and its counsel to charge discounted hourly rates, not standard rates. *See* ECF No. [154] at 11 n.7 (citing *SEC v. Onix Cap. LLC*, No. 16-CV-24678, 2020 WL 9549527, at *3 (S.D. Fla. Jan. 24, 2020), *report and recommendation adopted*, 2020 WL 9549523 (S.D. Fla. May 13, 2020) (noting that the receiver charged reduced hourly rates); *SEC v. LottoNet Operating Corp.*, 17-21033-CV-LENARD/GOODMAN, 2018 WL 8050454, at *4 (S.D. Fla. Feb. 26, 2018) (same); *FTC v. Student*

15

*Debt Dr. LLC*, No. 17-61937-CIV-DIMITROULEAS/SNOW, 2018 WL 4922465, at *1 (S.D. Fla. Jan. 11, 2018) (same); *SEC v. Int'l Cap. Mgmt., Inc.*, No. 98-7062-CIV-DIMITROULEAS/ROSENBAUM, 2008 WL 11470843, at *2 (S.D. Fla. Jan. 8, 2008) (same)). The Court further explained that past courts have stressed that "no receivership is intended to generously reward court-appointed officers." *Id.* (quoting *FTC v. Worldwide Info Servs., Inc.*, 2014 WL 12611353, at *2 (M.D. Fla. Apr. 24, 2014) (quoting *SEC v. W. L. Moody & Co.*, 374 F.Supp. 465, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975))). As such, the Court suggested that any voluntary reduction in fees and expenses in future Applications would be viewed favorably. *See id.*

The Second Application was filed before the Court's previous Order and could not take into consideration the Court's suggestion. The Court has nevertheless determined that the fees and costs in the Second Application were warranted for the reasons stated above. The Receiver's Third Application was filed after the Court's previous Order and reflected a minor voluntary reduction in fees and expenses. *See* ECF No. [157] at 8. The Third Application states in relevant part:

> In this Fee Application, the Temporary Receiver has applied a 3% discount off the total requested fees for H&K's services as counsel. Additionally, despite H&K's standard annual rate changes effective as of October 2021, the Temporary Receiver voluntarily and proactively capped the fees for herself and all H&K timekeepers at their previous rates for this Application Period to reduce the cost to the Receivership. In October 2021, the hourly rates for each partner at H&K (including the Temporary Receiver) working on this matter increased anywhere from approximately 4% to 7.5%. Hourly rates for each associate working on this matter increased anywhere from approximately 15% to 17%. In addition, Catherine Rowsey was recently promoted from associate to partner and her new billing rate increased by approximately 14.8%. Therefore, the fees requested are materially discounted and below the current market value.

*Id.*

Unlike the First and Second Applications, the Third Application provides the Court with new information regarding the Temporary Receiver's progress between October 1, 2021, and

16

December 31, 2021. While the Court recognizes the Temporary Receiver's efforts during the intervening months and the Temporary Receiver's willingness to discount fees and costs for those intervening months, the Court is not persuaded that the voluntary discount is sufficient to best achieve the goals of the Receivership. The continued difficulty in securing significant assets, notwithstanding the Temporary Receiver's efforts, warrants a more significant reduction in fees to better marshal and safeguard assets for the creditors. *See* ECF No. [43] at 2; *see also Onix Cap. LLC*, 2020 WL 9549527, at *2. As such, the Court will require an amended Third Application with an additional discount of the Temporary Receiver and her counsel's fees and costs to better effectuate the goals of the Receivership. The Court directs the Temporary Receiver to the most recently filed application for fees in a similar case in this District as a non-dispositive "starting point" in amending her Third Application. *See* ECF Nos. [147-1], [147-2]. The Court reserves ruling on other fees and costs until the filing of the amended Third Application.

  c. **Fourth Application**

In the Fourth Application, the Temporary Receiver seeks an Order that authorizes (a) compensation to the Temporary Receiver for $69,432.50; (b) discounted interim compensation to the Temporary Receiver's counsel, H&K, for $527,248.35; and (c) payment to Connor and Winters, LLP for legal services in the concurrent bankruptcy proceeding pending in Oklahoma for $1,320.00. *See* ECF No. [181] at 26. The fees reflect a similar discount found in the Third Application. *See id.* at 13-14. The Fourth Application states in relevant part:

> In this Fee Application, the Temporary Receiver has applied a 3.5 % discount off the total requested fees for the receiver and H&K's services as counsel. Additionally, despite H&K's standard annual rate changes effective as of October 2021, the Temporary Receiver voluntarily and proactively capped the fees for herself and all H&K timekeepers at their rates prior to October 2021 for this Application Period to reduce the cost to the Receivership. In October 2021, the hourly rates for each partner at H&K (including the Temporary Receiver) working on this matter increased anywhere from approximately 4% to 7.5%. Hourly rates

17

for each associate working on this matter increased anywhere from approximately 15% to 17%. Therefore, the fees requested are materially discounted and below the current market value.

*Id.*

Similar to the Court's reasoning with regard to the Third Application, the Court is not persuaded that the voluntary discount is sufficient to best achieve the goals of the Receivership. As such, the Court will require an amended Fourth Application with an additional discount. *See* ECF No. [43] at 2; *see also Onix Cap. LLC*, 2020 WL 9549527, at *2. The Court again directs the Temporary Receiver to the most recently filed application for fees in a similar case in this District as a non-dispositive "starting point" in amending her Fourth Application. *See* ECF Nos. [147-1], [147-2]. The Court reserves ruling on the fees for Connor and Winters, LLP until the filing of the amended Fourth Application.

### IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The Second Application, **ECF No. [131]**, is **GRANTED IN PART AND DENIED IN PART**. The Temporary Receiver is authorized to:

   a. Compensate herself the amount of **$41,175.99**;

   b. Compensate Temporary Receiver's counsel, H&K, the amount of **$320,602.00**;

   c. Pay HD Investigative Group the amount of **$4,161.00**;

   d. Pay Legalsa, local counsel in Guatemala, the amount of **$15,862.00**;

   e. Pay R&H Restructuring for forensic asset tracing the amount of **$18,407.33**;

   f. Pay Connor and Winters, LLP for legal services in the concurrent bankruptcy proceeding pending in Oklahoma the amount of **$3,151.90**; and

   g. Pay Broadlands the amount of **$22,984.00**.

2. The Creditors' request for a hearing is **DENIED**.

3. The Third Application, **ECF No. [157]**, is **DENIED WITHOUT PREJUDICE**. The Temporary Receiver shall file an amended Third Application in keeping with the Court's Order by no later than **June 28, 2022**.

4. The Fourth Application, **ECF No. [181]**, is **DENIED WITHOUT PREJUDICE**. The Temporary Receiver shall file an amended Fourth Application in keeping with the Court's Order by no later than **June 28, 2022**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 14, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record