UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60462-BLOOM/Valle

CCUR AVIATION FINANCE, LLC and
CCUR HOLDINGS, INC.,

    Plaintiffs,

v.

SOUTH AVIATION, INC. and
FEDERICO A. MACHADO,

    Defendants.
_____/

**ORDER ON FIFTH INTERIM APPLICATION
FOR REASONABLE FEES AND REIMBURSEMENT OF COSTS**

**THIS CAUSE** is before the Court upon the Temporary Receiver Barbara Martinez's ("Temporary Receiver") Fifth Interim Application for Reasonable Fees and Reimbursement of Costs for April 1, 2022, through June 30, 2022, ECF No. [207], ("Application"). Creditors Rusty 115 Corp., Hopop Corp., Davidpop Corp., Rustypop Corp., Darusty Corp., Moncler Motors LLC, BOE 25014 LLC, BOE 30868 LLC, BOE 30874 LLC, BOE 30875 LLC, BOE 34432 LLC, Dash 4542 LLC, Dash 4554 LLC, Dash 4555 LLC, Chemtov Mortgage Group Corp., CMG 777 Excrow3 LLC, CMG 777 Escrow4 LLC, CMG 777 Escrow5 LLC, CMG DHC8 Escrow 7 LLC, and Bryn and Associates, P.A. (collectively, "Creditors") filed a Response in Opposition to the Application, ECF No. [217], ("Response"), to which The Temporary Receiver filed a Reply, ECF No. [218] ("Reply"). The Court has carefully considered the Application, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Application is granted in part and denied in part.

Case No. 21-cv-60462-BLOOM/Valle

I.  **BACKGROUND**

On April 16, 2021, the Court appointed the Temporary Receiver to confirm Defendant South Aviation Inc.'s ("South Aviation") assets; determine the amount owed to South Aviation's creditors; freeze assets to ensure South Aviation's creditors are repaid; marshal, safeguard, and liquidate assets; ensure that preferential payments to creditors and insiders do not occur at the expense of other creditors; ensure that South Aviation's creditors are repaid in a fair and equitable manner; and file and prosecute ancillary actions to recover monies or assets for the benefit of South Aviation's creditors. *See* ECF No. [43] at 2 ("Appointment Order"). According to the Appointment Order, the Temporary Receiver has the power to "[c]hoose, engage, and employ attorneys, accountants and other appropriate agents or professionals, as the Temporary Receiver deems advisable or necessary in the performance of her duties and responsibilities." *Id.* ¶ 8.P. Additionally, the Appointment Order states:

> The Temporary Receiver and all professionals she retain[s] are entitled to compensation deemed to be reasonable and appropriate for their work. The Temporary Receiver is authorized to file motions to employ professionals, such as attorneys and/or accountants, whose rates will be disclosed in same.

*Id.* ¶ 46.

On July 16, 2021, the Temporary Receiver filed her First Application for Reasonable Fees and Reimbursement of Incurred Costs for April 16, 2021 – June 30, 2021. *See* ECF No. [89] ("First Application"). The Creditors and Intervenor Metrocity Holdings, LLC filed a Response in Opposition, ECF No. [92] ("First Response"), to which the Temporary Receiver filed a Reply, ECF No. [108-1] ("First Reply"). Magistrate Judge Valle issued her Report and Recommendation ("R&R"), recommending that the First Application be granted in part. *See* ECF No. [146]. The Creditors, but not Intervenor Metrocity Holdings, LLC, filed their Objection, arguing that Magistrate Judge Valle erred. *See* ECF No. [153] ("Objection"). Upon review, the Court overruled

the Creditors' Objection, adopted the R&R, and granted in part the First Application. *See* ECF No. [154]. The Creditors appealed the Court's Order adopting the R&R., s*ee* ECF No. [163], but the Eleventh Circuit dismissed the Creditors' appeal for lack of jurisdiction. *See* ECF No. [187].

The Temporary Receiver filed the Second Interim Application for Reasonable Fees and Reimbursement of Costs for July 1, 2021 – September 30, 2021, ECF No. [131] ("Second Application"), Third Interim Application for Reasonable Fees and Reimbursement of Costs for October 1, 2021 – December 31, 2021, ECF No. [157] ("Third Application"), and Fourth Interim Application for Reasonable Fees and Reimbursement of Costs for January 1, 2022 – March 31, 2022, ECF No. [181] ("Fourth Application"). The Court issued an Omnibus Order on Second, Third, and Fourth Applications for Reasonable Fees and Reimbursement of Costs, ("Omnibus Order") in which it granted in part and denied in part the Second Application, denied the Third Application without prejudice, and denied the Fourth Application without prejudice. ECF No. [193]. In her Third and Fourth Applications, the Temporary Receiver had slightly discounted her fees and costs; however, the Court required amended applications, opined that an additional discount was necessary, and directed the Temporary Receiver to look to similar cases in this District as a "starting point." *Id*. at 16-17. The Temporary Receiver thereafter filed the Amended Third Application and the Amended Fourth Application. *See* ECF Nos. [196], [197], which the Court granted in part and denied in part, imposing fee ceilings for the Temporary Receiver and her counsel. *See* ECF No. [205].

In compliance with the fee ceilings imposed in the Court's Omnibus Order on the Amended Third and Fourth Applications, *Id*., the Temporary Receiver filed the instant Application, ECF No. [207]. Creditors filed a Response in Opposition, arguing that (1) the hourly rates billed by the Temporary Receiver and her counsel exceed the market rate and are unreasonable; (2) because no

3

results were obtained during the Application period, a cost-benefit analysis compels substantial reductions in any compensation and fees that may be awarded; and (3) the hours billed by the Temporary Receiver and her counsel require reduction. *See generally* ECF No. [217]. The Temporary Receiver replies that (1) the Creditors' recycled and duplicative arguments do not warrant a rate reduction, holdback, or postponement of ruling on this Application; and (2) the Temporary Receiver and her professionals have met their burden with regard to exercising billing judgment. *See generally* ECF No. [218].

## II. LEGAL STANDARD

A receiver is an officer of the court and is subject to its direction and orders. *See SEC v. Onix Cap. LLC*, No. 16-CV-24678, 2020 WL 9549527, at *2 (S.D. Fla. Jan. 24, 2020), *report and recommendation adopted*, 2020 WL 9549523 (S.D. Fla. May 13, 2020). A receiver is generally permitted to obtain counsel for herself, and other employees to aid in the management of the receivership estate. *See id*. (citations omitted). A receiver also owes a duty to exercise reasonable care to protect and preserve the assets of the receivership estate as required by a receivership order. *See id.* In determining a reasonable fee for a receiver, her attorneys, and accountants, a court must consider the nature and complexity of the legal issues presented and the skills necessary to resolve them. *See SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and results are always relevant." (citation and internal quotation marks omitted)).

The courts use the lodestar method to determine the reasonableness of the fees charged by the receiver and the professionals she hires. *See, e.g.*, *Onix,* 2020 WL 9549527, at *2; *FTC v. JPM Accelerated Servs., Inc.*, No. 09-CV-2021-OrL-28KRS, 2010 WL 11626760, at *2 (M.D. Fla. Jul. 12, 2010) ("Courts have held that a lodestar-style analysis is appropriate in evaluating the

reasonableness of fees charged by accountants and other non-attorney professionals."). The lodestar approach considers the reasonableness of the hourly rates claimed by the professionals and the reasonableness of the hours expended. *Onix*, 2020 WL 9549527, at *2; *JPM*, 2010 WL 11626760, at *2. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The relevant legal community is "the place where the case is filed." *ACLU v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotations and citation omitted). While the particular expertise, experience, and prestige of the attorneys may be considered, the fees are constrained by the prevailing market rates. The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Norman*, 836 F.2d at 1299.

### III.  DISCUSSION

The Temporary Receiver seeks fees and costs in the following amounts in the Application: $41,595.00 in fees and $403.46 in costs for the Temporary Receiver; $115,106.00 in fees and $3,963.86 in costs for the Temporary Receiver's counsel, Holland & Knight LLP (H&K), and $1,080.00 in fees for Connor & Winters, the Oklahoma Bankruptcy Counsel. ECF No. [207]. Creditors respond that (1) the hourly rates billed by the Temporary Receiver and her counsel exceed the market rate and are unreasonable; (2) because no results were obtained during the Application period, a cost-benefit analysis compels substantial reductions in any compensation and fees that may be awarded; and (3) the hours billed by the Temporary Receiver and her counsel require reduction. *See generally* ECF No. [217]. The Temporary Receiver replies that (1) the Creditors' recycled and duplicative arguments do not warrant a rate reduction, holdback, or

postponement of ruling on this Application; and (2) the Temporary Receiver and her professionals have met their burden with regard to exercising billing judgment. *See generally* ECF No. [218].

### A. Reasonableness of Fee Rates

The Temporary Receiver contends that the rates charged are reasonable and hours were reasonably expended. ECF No. [207] at 12-13. The Creditors argue that even with the rate caps imposed, the rates charged by the Receiver and her counsel are unreasonable because they exceed the prevailing rates charged by other receivers in the Southern District of Florida. ECF No. [217] at 10-13. Creditors suggest that, at a minimum, the rates should be reduced to $350.00 per hour for the Temporary Receiver and H&K Partners and $250.00 for associates. *Id*. at 13.

The Creditors argue that the Application continues to use billing rates that exceed the rates for similar receiverships in the Southern District of Florida. ECF No. [217] at 10-11. The Creditors suggest that the Temporary and her counsel should reduce their rates to align with rates established in similar receiverships. *Id*. at 11. The Temporary Receiver responds that her rates of those of her counsel are consistent with the reductions offered in the cases cited by Creditors. Moreover, the Receiver contends that the Court has already considered the case law cited by Creditors and found that the rates charged by similar receiverships are "a non-dispositive starting place for the Court's analysis because naked rates fail to reflect the unique challenges and responsibilities imposed by every receivership." ECF No. [218] at 3.

In the Application, the Temporary Receiver and her counsel billed at rates the Court determined to be reasonable considering the unique challenges posed by this particular Receivership. *See* ECF No. [205] at 11. The Court previously found that the Temporary Receiver employed resources and diligence in marshalling assets. However, in light of the assets thus far accrued by the Receivership, the complicated and drawn-out nature of contending with a business

that ceased operation, foreign and domestic assets, and allegations of fraud, the hourly rates must have reasonable limitations. *Id*. The Application and the most recently filed, Seventh Status Report, ECF No. [214], reveal that the Temporary Receiver is continuing to employ her professionals to perform the essential functions of the Receivership but is faced with complications due to the nature of the remaining assets and restraints on those assets. The Court also considers as a factor that no additional assets[1] were recovered for the benefit of the Receivership Estates during this period. As such, rates capped at $500.00 per hour for partners, $275.00 per hour for associates, and $150.00 for non-legal staff continue to be appropriate to ensure that the fees accrued by the Temporary Receiver and her counsel provide adequate compensation but do not usurp the capital available to ensure the Creditors are repaid in a fair and equitable manner. *Id*.

### B. Reasonableness of Time Expended

Having determined that the rates are reasonable, the Court addresses whether hours were reasonably expended by the Temporary Receiver and her counsel. The Temporary Receiver asserts that she and her team at H&K submitted time records and summaries with sufficient evidence to support their fees. ECF No. [207] at 13. The Creditors argue that the Lodestar Analysis is just the first step in assessing the fees sought by a Receiver and the Court must proceed to a cost-benefit analysis. ECF No. [217] at 13. The Creditors contend that the overall amounts sought must be reduced because the substantial fees and costs are being incurred with no benefit to the Receivership Estates. *Id*. at 14. The Creditors assert that it is unreasonable to bill a client for the excessive numbers of timekeepers from H&K who billed this file. *Id*. at 18-19. The Temporary Receiver responds that she and her counsel performed valuable work and that the Creditors fail to

---

[1] Although the sale of an airplane officially closed during this Application period, it has been considered in multiple applications for fees and will not be considered again in this Application period as a newly marshalled or recovered asset. *See* ECF No. [207] at 7-8.

7

cite to any specific time entries or support their general claims with clear examples because they do not exist. ECF No. [218] at 5.

### i. Cost-Benefit Analysis

The Creditors contend that the overall amounts sought must be reduced because substantial fees and costs are being incurred with no benefit to the Receivership Estate. ECF No. [217] at 15. The Creditors also stress that there are insufficient assets in the Receivership Estate to afford the compensation sought. *Id.* at 15.

The Court once again reminds the Creditors that the Appointment Order provides that "[t]he compensation of the Temporary Receiver and her professionals shall be entitled to priority as administrative expenses." *See* ECF No. [43] ¶ 48. Although the Temporary Receiver did not point to any newly marshalled assets during this Application period, she sufficiently described the work she and her counsel preformed to benefit the Receivership Estates and to necessarily keep the Court informed of the Receivership's progress. ECF No. [207]. The Eleventh Circuit has held that "Even though a receiver may not have increased, or prevented a decrease in, the value of collateral, if a receiver reasonably and diligently discharges [her] duties, [s]he is entitled to compensation." *Elliott*, 953 F.2d at 1577; *see also Elliott*, 953 F.2d at 1576 ("there is an implied understanding that the court which appointed [the Temporary Receiver] and whose officer [she] is will protect [her] right to be paid for [her] services, to be reimbursed for [her] proper costs and expenses.") (citation and internal quotation marks omitted)). For that reason, the Court rejects the Creditors' position that the fact that no appreciable assets have been realized necessitates material holdbacks. *See* ECF No. [217] at 15 n. 11.

The Court therefore rejects Creditors' contention that the "Temporary Receiver's speculation about what may or may not occur in the future does not meet her burden to show actual

results justifying the amounts of fees and compensation requested." *See id*. at 16. The Court similarly declines the Creditors' request for a holdback. Although the Court relies on precedent which dictates that results are always relevant, those results are not always dispositive as to whether fees are merited. *See Elliot*, 953 F.2d at 1577 ("Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and results are always relevant." (citation and internal quotation marks omitted)). Here, the Application details work that the Temporary Receiver, her counsel, and other professionals performed to advance the goals of the Receivership and therefore, by the terms of the Appointment Order, the Court properly considers the Application and awards the periodic costs of administering the Receivership. The Court proceeds to consider Creditors' argument that a reduction in fees is necessary because redundant work was performed by multiple timekeepers at H&K that is not justified by the results or by the Temporary Receiver's Application.

### ii. Billing Judgment

The Temporary Receiver contends that she presented timesheets and receipts with sufficient descriptions to clarify the work performed by H&K. ECF No. [207] at 13. The Creditors argue that the Temporary Receiver and her counsel failed to exercise proper billing judgment and invoices reflect excessive, redundant, or otherwise unnecessary time expended without benefit to the Receivership Estates. ECF No. [217] at 18. The Creditors assert that an across-the-board percentage cut to the total number of hours claimed, the hourly rates claimed, or both are warranted in light of the failures to exercise billing judgment. ECF No. [217] at 20.

A review of the billing by H&K indicates that multiple partners and associates were preforming each task, creating many time entries that involved reviewing, meeting, and revising by multiple partners and associates prior to each filing. *See* ECF No. [207-2]. For example, Jessica

B Magee, Warren E. Gluck, Katharine Menendez de la Cuesta, and Sydney B. Alexander all reviewed the fourth fee application, while two of the four also revised it. *See* ECF No. [207-2] at 7-8. There is no justification given for why so many timekeepers needed to review and revise the fee application or proffered explanation of the distinct contribution of each reviewer. The Court finds that without justification it would be unreasonable to assume that four attorneys all reasonably expended time reviewing and revising the same fee application. The Court especially highlights the .6 hours expended by Jessica B Magee to "review final pre-filing versions of Fee Application and motion to extend and communicate with colleagues regarding same" and Warren E. Gluck's .3 hours to "review draft fee application" with no further explanation. *Id*. at 7.

"Redundant hours generally occur where more than one attorney is working on a case. There is nothing inherently unreasonable about a client retaining multiple attorneys – or, in this case, the Receiver retaining counsel -- who 'may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer.'" *Sec. & Exch. Comm'n v. LottoNet Operating Corp.*, 17-21033-CV, 2018 WL 8050454 (S.D. Fla. Feb. 26, 2018) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). Here, the Temporary Receiver has not indicated why it was necessary or reasonable for multiple attorneys to work on identical tasks or why time was reasonably expended by attorneys meeting and discussing those tasks.

The Court also finds unreasonable the 1.8 hours billed by Sydney B. Alexander between two separate time entries for a total of $495 to draft an unopposed motion for extension of time. *See* ECF No. [207-2] at 26-27. This is especially unreasonable considering a previous bill for only .6 hours to correspond with the Creditors and draft a motion for extension of time by the same timekeeper on October 15, 2021. *See* ECF No. [196-2] at 15. The Court sees no reason that one

motion for extension of time, especially where unopposed, should take the same lawyer more than twice as long as one previously filed with and granted by the Court.

Similarly unreasonable are the 15.3 hours billed by Brandon King between May 4, 2022, and May 11, 2022, for a combination of a phone call to discuss entity analysis, reviewing, and revising prior timelines, reviewing, and analyzing prior timelines, and attending and participating in meetings. *Id*. at 12-14. It is unclear from the invoice what the purpose of this work was and how it contributed to moving forward the interests of the Receivership Estates.

The Creditors cite to an Eastern District of New York case, were the Court found that "the mere fact that the professionals in this case worked and documented a significant number of hours is insufficient to warrant compensation for all of them." ECF No. [217] at 17 (quoting *S.E.C. v. Goren*, 272 F. Supp. 2d 202, 213 (E.D.N.Y. 2003)). Because multiple H&K timekeepers were working on the same submissions to the Court, and multiple time entries were spent on internal communication regarding strategy and tasks, it appears that more time was spent than necessary participating in meetings and reviewing and revising than would have been necessary if only two to three timekeepers worked on each necessary task.

The Temporary Receiver spent a significant portion of her billed hours communicating with her counsel and reviewing their work. More than sixteen separate entries include time spent on calls or in meetings with her counsel. Those time entries account for more than 12 hours or $6,000.00. *See* ECF No. [207-3]. Although it is certainly not unreasonable to meet with counsel. However, the time spent, and amount billed, for consulting with counsel and meeting with different members of the H&K could be reduced by decreasing the number of timekeepers assigned to work for the Temporary Receiver.

In light of these findings, the Court determines that a 12% across the board reduction in the Temporary Receiver and H&K's fees is necessary to account for the amount of time not reasonably expended on work that moved the ball forward in the interest of the Receivership Estates during this application period. *See Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.").

Contrary to assertions by the Creditors, the Court does not see any evidence of time entries for clerical, filing, or other non-recoverable tasks. The only time entry for filing was $45.00 for a filing of the 2022 annual report in Florida for South Aviation, Inc., and not a non-compensable court filing. *See* ECF No. [207-3] at 4.

The Court therefore grants in part the Application, applying a 12% across the board reduction for the Temporary Receiver and H&K. Accordingly, the Court finds that the Temporary Receiver is entitled to $36,603.60 in fees, H&K is entitled to $111,293.28 in reasonable attorneys' fees. Creditors did not challenge the reasonableness of the requested fees for Connor & Winters. The Court has reviewed those requested fees and determines that they are reasonable. *See* ECF No. [207-4]. Accordingly, the Court finds that Connor & Winters is entitled to $1,080.00 in reasonable attorneys' fees.

### C. Reasonableness of Costs

Creditors do not object to the reasonableness of the requested costs. The Court has reviewed the costs for which the Temporary Receiver and H&K seek reimbursement and finds those costs to be reasonable. *See* ECF Nos. [207-2], [207-3]. Accordingly, the Court grants the

Temporary Receiver's application for $403.46 in costs for herself and $3,963.86 in costs for her counsel, H&K.

### D. Requests for Hearings

In the Response, the Creditors request a hearing. *See* ECF No. [217] at 21. Given the Court's analysis above, a hearing is not necessary to address the issues presented.

### E. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The Fifth Application, **ECF No. [207]**, is **GRANTED in part and DENIED in part.**

2. The Temporary Receiver is entitled to $36,603.60 in fees and $403.46 in costs.

3. H&K is entitled to $111,293.28 in fees and $3,963.86 in costs.

4. Connor & Winters is entitled to $1,080.00 in fees.

5. The Creditors' requests for hearings are **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 6, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record